**UNITED STATES of America, Appellee,**

v.

**Russell V. LOSING, Jr., Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Donald Ray FEICK, Appellant.**

**Nos. 76–1040, 76–1045.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1976.

Decided July 30, 1976.

Bernard Steinger, Clayton, Mo., for appellant, Russell V. Losing, Jr.

Donald J. Stohr (former U. S. Atty.), and Richard E. Coughlin, Asst. U. S. Atty., St. Louis, Mo., for appellee, United States.

Irl B. Baris, St. Louis, Mo., for appellant; Kenneth H. Graeber, St. Louis, Mo., on brief for Donald Ray Feick.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY and HENLEY, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendants Donald Ray Feick and Russell Victor Losing, Jr., were tried jointly and convicted in the Eastern District of Missouri on various narcotics charges. Both appeal. They contend, *inter alia*, that the district court erred in failing to conduct an evidentiary hearing to consider the validity of a certain wiretap conducted by the Government in purported compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. Because we agree in part with this contention, we remand this case to the dis-

trict court in order that that court may conduct a hearing consistent with the views expressed herein. We retain jurisdiction over the appeal, however, and will, to the extent necessary, consider other issues raised following disposition on remand.

The record discloses that on December 13, 1974, the Government submitted an application to Judge Regan[1] seeking authority to intercept wire communications of Joseph Cranage, the central figure in an alleged narcotics conspiracy, and others, then unknown, over a certain telephone in St. Louis. The application, as supplemented by authorization papers for the application and by the affidavit of a special agent of the Drug Enforcement Administration, asserted there was probable cause to believe that Cranage and others had violated and were violating 21 U.S.C. §§ 812, 841(a)(1) and 846, and that other requisites for the desired court order had been satisfied. The Government simultaneously applied for authorization to use a pen register.

In an order dated December 13, 1974, Judge Regan made specific findings that, *inter alia,* (1) probable cause existed to believe that Cranage and others had violated and were violating the provisions of 21 U.S.C. §§ 812, 841(a)(1) and 846, and (2) normal investigative procedures had either been tried without success and reasonably appeared unlikely to succeed if continued or reasonably appeared unlikely to succeed if tried. The order authorized the Government to conduct the desired interceptions until such time as specified material facts were discovered or for a period of twenty days from the date of the order, whichever was shorter, provided that the interceptions were executed as soon as practicable and that they were conducted so as to minimize the interception of communications not oth-

erwise subject to Title III. The order also required the Government to provide progress reports to the court on the fifth, tenth, and fifteenth days following entry of the order. The court simultaneously, by separate order, authorized the use of a pen register.

On October 16, 1975, a 56-count indictment was returned charging sixteen persons, including Feick and Losing, with various violations of the narcotics laws. Count 1 of the indictment charged that all sixteen individuals conspired, in violation of 21 U.S.C. § 846, to manufacture, distribute, and dispense heroin. In addition to this conspiracy charge, Feick and Losing were each charged in four separate counts[2] with the use of a telephone to facilitate the conspiracy, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2, and Losing, but not Feick, was charged in Count 42 with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Beginning on December 8, 1975, Feick and Losing were jointly tried to a jury.[3] The evidence against them consisted largely of the testimony of Cranage and tapes, together with transcripts thereof, of nineteen telephone conversations which were obtained by the Government through the Cranage wiretap. Both Feick and Losing were convicted on all of the respective charges against them. Feick was sentenced to a total term of three years imprisonment to be followed by a three-year special parole. Losing was sentenced to a total of fifteen years imprisonment to be followed by a special five-year parole.

On November 3, 1975, approximately one month prior to trial, a motion to suppress the wiretap and derivative evidence was filed.[4] The motion, which listed ten alleged grounds for suppression, requested "a full

---

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

2. Feick was so charged in Counts 13, 22, 23 and 24. Losing was so charged in Counts 7, 43, 44 and 45.

3. Of the fourteen remaining defendants, most entered guilty pleas. None were tried and none are parties to this appeal.

4. The motion to suppress which is contained in the designated record on appeal was filed by Feick. There are no documents in the record by which Losing either joined Feick's motion or

scale hearing to determine the procedure used in the conduct of the wiretap. . ." The district court, without assigning a reason, denied the motion and declined to conduct a hearing. The motion was renewed at several points during the trial. The court consistently declined to conduct a hearing, at one point explaining that "Judge Regan I assume knew what he was doing" when he authorized the wiretap. Defendants contend that the court's failure to conduct a hearing was error.

The record further discloses that, on October 22, 1975, at arraignment, the Government expressed its willingness to allow defense counsel to examine the transcripts of all the intercepted conversations which had been transcribed and to listen to all the tapes which the Government possessed. Tapes of sixty-eight conversations were in fact played in defendants' presence on November 8, 1975, and all tapes were in fact made available to defense counsel prior to trial. Defendants to not dispute the Government's statement that the application for the wiretap, together with its supporting materials, and Judge Regan's authorization order were received by defendants on October 29, 1975 (Feick) and November 3, 1975 (Losing).

■ With the above facts in mind, we consider whether the district court was required to conduct a hearing. On the one hand, we agree with defendants that a district judge should not deny a wiretap hearing solely because either he or another district judge has previously authorized the wiretap. See Abramson v. Mitchell, 459 F.2d 955 (8th Cir. 1972). On the other hand, Abramson is not controlling here, since it was a civil case and the denial of a hearing there had the effect of eliminating vital evidence, including the wiretap application, from the record, thereby precluding effective appellate review of the trial court's ruling. The same cannot be said here.

Nor do we find support for defendants' position in 18 U.S.C. § 2518(10)(a). That section merely states that a motion to suppress wiretap or derivative evidence may be made on various specified grounds. While it does address several incidental matters, it does not specify when a hearing on the motion is required.

■ As a general rule, we perceive no reason why, for the purpose of determining whether a hearing is required, a motion to suppress wiretap evidence should be treated any differently from a motion to suppress other kinds of evidence. The applicable criterion, then, is that stated by the Ninth Circuit in *United States v. Ledesma*, 499 F.2d 36, 39 (9th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974), with which we agree.

> Evidentiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question, an evidentiary hearing is required.

*See also United States v. Hickok*, 481 F.2d 377, 378–79 (9th Cir. 1973); *United States v. Poe*, 462 F.2d 195, 197 (5th Cir. 1972), *cert. denied*, 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973); *United States v. Thornton*, 147 U.S.App.D.C. 114, 454 F.2d 957, 967 n. 65 (1971); *United States v. Cranson*, 453 F.2d 123, 126 (4th Cir. 1971), *cert. denied*, 406 U.S. 909, 92 S.Ct. 1607, 31 L.Ed.2d 821 (1972); *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969), *cert. denied*, 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510

filed his own. In addition, Losing has elected to rely on Feick's brief on appeal, which understandably fails to demonstrate whether Losing so moved. However, the trial transcript indicates that Losing did move to suppress and that Losing continued to object at trial to the wiretap evidence, and the list of district court docket entries suggests (but does not establish) that Losing and Feick were permitted to join each other's motions. The Government raises no issue in this regard. We accordingly treat Feick and Losing as standing in the same position. The district court remains free on remand, however, to consider, consistently with the views expressed in this opinion, material discrepancies, if any, between the motions filed by Feick and Losing.

(1970); *United States v. One 1965 Buick,* 392 F.2d 672, 678 (6th Cir. 1968), *vacated on other grounds sub nom., Dean v. United States,* 402 U.S. 937, 91 S.Ct. 1602, 29 L.Ed.2d 105 (1971); Fed.R.Crim.P. 41(e). It is also clear that a hearing is unnecessary when it can be determined without a hearing that suppression is improper as a matter of law. *See United States v. Warren,* 453 F.2d 738, 742–43 (2d Cir.), *cert. denied,* 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972); *Cohen v. United States,* 378 F.2d 751, 760 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). Beyond these meager guidelines, however, the determination of whether a hearing is required is necessarily dependent upon the particular facts which attend a particular request, and the district court is properly left with a certain amount of discretion in this regard. *See United States v. Poe, supra* at 197; *United States v. Warren, supra* at 743.

The grounds for suppression alleged in the motion now under review are set out in the margin.[5] We agree with the district court that most of these did not require a hearing.

■ The grounds asserted in paragraphs 1, 6, 7, 9 and 10 are conclusory in nature. A hearing was not required to resolve these contentions. Paragraph 6 makes apparent reference to the wiretaps which led to the successful prosecution of Eugene Kirk and others. *See United States v. Kirk,* 534 F.2d 1262 (8th Cir. 1976). The Kirk wiretaps did supply the Government with much of the information upon which the wiretap appli-

5. "1. Said evidence of intercepted telephone communications and leads therefrom were obtained in violation of this defendant's rights under the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

"2. The laws pursuant to which said telephone communications were intercepted are unconstitutional in that they violate this defendant's rights to freedom of speech under the First and Fourteenth Amendments, freedom from unreasonable searches and seizures under the Fourth and Fourteenth Amendments, and right to due process of law and privilege against self-incrimination, as guaranteed by the Fifth and Fourteenth Amendments.

"3. The interception of said telephone communications was not authorized by proper persons. [The memorandum in support of the motion added: "The authorization procedure in the Department of Justice was defective in that it was not properly authorized by the Attorney General or a designated Assistant Attorney General."]

"4. The applications for orders authorizing the interception of said telephone communications were insufficient in that they did not adequately contain allegations of facts and circumstances to justify the issuance of orders to intercept; said application further failed to contain sufficient details as to the particular offenses that were about to be committed; said applications further failed to contain a sufficiently full and complete statement as to the failure of other investigative procedures.

"5. The orders authorizing the interception of said telephone communications were illegal in that there were insufficient facts presented to show probable cause for the belief that anyone was committing, had committed, or was about to commit an offense enumerated by law; further that there was no probable cause for the belief that particular communications concerning such offenses would be obtained through interception; further, that there were insufficient showings that normal investigative procedures would have been or would be unsuccessful.

"6. The applications for the orders authorizing interception were based upon illegally obtained and tainted evidence. [The memorandum in support of the motion added: "It also appears that much of the purported probable cause for the issuance of the order was based upon previous wiretaps, and we have not been furnished with the relevant documents pertaining to such prior wiretap investigation."]

"7. The order authorizing the use of a pen register was not based upon a proper application therefor.

"8. The agents conducting the surveillance failed to minimize the interception of communications not subject to interception and failed to record all communications which were monitored and overheard.

"9. The notice and inventory of such interceptions were defective and not properly served on this defendant. [The memorandum in support of the motion added: "[T]he notice and inventory as to this defendant was not properly served, in that it was not served by the Clerk of the Court and was delayed without just cause."]

"10. The procedure for interception was invalid and unconstitutional for such other reasons as may appear after the Court and this defendant have had an opportunity to inspect the court files and the tapes of intercepted telephone communications."

cation in the instant case was based. However, paragraph 6 alleges only the barest allegation of taint, and, while defendants do allege that the pertinent documents were not made available to them, they do not allege what, if any, attempts were made to procure these documents. Such allegations are not sufficient to require a hearing. Paragraph 9 fails to allege such obviously pertinent facts as who did serve the notice and inventory, how long service was delayed without just cause, or what prejudice was sustained by either of the alleged defects. *See United States v. Civella*, 533 F.2d 1395 (8th Cir. 1976). With respect to paragraph 10, the record as summarized above reveals that defendants had ample opportunity to review the court files and the tapes prior to trial. If any irregularity were discovered, the motion should have been renewed and the irregularity specified.

The ground asserted in paragraph 2 has been resolved adversely to defendants. *United States v. Kirk, supra* at 1273–74. *United States v. Civella, supra* at 1399. Factfindings could not have availed defendants. No hearing was necessary.

■ With respect to the ground asserted in paragraph 3, a wiretap application may be authorized by "any Assistant Attorney General specially designated by the Attorney General." 18 U.S.C. § 2516(1). Attached to the wiretap application in this case are copies of (1) an order of then Attorney General William B. Saxbe designating the Assistant Attorney General for the Criminal Division to authorize wiretaps, and (2) an order of Assistant Attorney General Henry Petersen, of the Criminal Division, authorizing the wiretap application in this case. The authorization papers are thus in order and are presumed regular. Defendants have shown no more than a

general suspicion about their authenticity; without more, they are not entitled to a hearing. *United States v. Kirk, supra* at 1275.

■ Each of the allegations contained in paragraphs 4 and 5 of the motion contests the facial validity of the wiretap application and order. Such matters do not require a hearing for the simple reason that facts not recited in the application or order have no bearing upon the facial validity of the application or order.[6]

With the exception of paragraph 8, then, we find no error in the district court's refusal to conduct a hearing.[7]

■ We reach an opposite conclusion, however, with respect to the minimization issue contained in paragraph 8. *See* 18 U.S.C. § 2518(5). A total of 1798 calls to and from the target phone were intercepted, at least in part, over a twelve- or thirteen-day period. Of these, a substantial number were either busy or no answer. Nineteen conversations were introduced in evidence at the trial below. At trial it was disclosed on cross-examination of a Government witness that the Government had employed a policy to minimize interception of all attorney-client and clergyman-parishioner conversations as well as all conversations not of a drug-related nature, that a "panic button" was installed so that the monitoring could be suspended during such conversations, and that the panic button was used at least on some occasions, although relistening would sometimes occur following use of the panic button in order to determine whether the subject matter of a conversation had changed. The record does not disclose, however, how often such minimization occurred or how many calls

---

**6.** Defendants separately argue that the district court erred in ruling that the recitations in the affidavit included sufficiently full and complete statements that other investigative procedures would not have been adequate. *See* 18 U.S.C. § 2518(1)(c) and (3)(c). We do not reach this substantive allegation at this time but shall do so, if necessary, following disposition on remand.

**7.** Although not mentioned in the original motion, an additional ground for suppression and hearing, *viz.*, that the Government made three separate recordings of the intercepted conversations, was argued by defendants at trial and is renewed on appeal. We do not address whether the issue was timely raised. It is frivolous on the merits. *See* 18 U.S.C. § 2518(8)(a).

were of a drug-related nature, nor does it indicate how closely the district court supervised the monitoring. In general, aside from the facts heretofore mentioned that the Government was investigating a wideranging conspiracy with numerous participants and that all tapes and transcripts were made available to defendants prior to trial, the record is essentially barren of additional details pertinent to the minimization issue. It also contains no specific factfindings pertinent to that issue.

To be sure, the minimization allegation contained in the motion to suppress is little, if any, more specific than some of the allegations heretofore rejected for lack of specificity. However, the Government, at least in the beginning, was in exclusive possession of the information by which the allegation could have been made more specific. Nor can we agree with the district court that the Government, having afforded defendants an opportunity to review the tapes and transcripts, had given defendants sufficient access to the information to enable them to make the allegation specific prior to a hearing. The burden which would be placed on defendants by requiring them to base their minimization argument solely on information derived from the tapes of some 1800 calls (less however many were busy or no answer) is a tedious, if not impossible, one, and is appreciably greater than the burden which would be placed on the Government by requiring its agents to divulge in some manner how the monitoring was executed. Moreover, certain pertinent facts, such as the number and nature of calls not intercepted and the extent of judicial supervision over the monitoring, could not be gleaned from an examination of the tapes themselves.

■ In *United States v. Bynum*, 475 F.2d 832 (2d Cir. 1973), *decision on subsequent appeal vacated on grounds not affecting this decision*, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974), the Second Circuit directed the district court to conduct a hearing on minimization even though tapes of some 3000 conversations had been made available to the defendants before trial.

While the record in *Bynum* was in some respects different from that now before us, we agree with the Second Circuit that the mere fact that a defendant has been afforded an opportunity to review a large number of tapes does not pretermit the need for a hearing, and we so hold.

Still, the record before us does reveal some of the facts pertinent to the minimization issue. If these facts were sufficient, as a matter of law, to permit the conclusion that suppression was not mandated by virtue of a failure to minimize, any error in not granting a hearing would not be prejudicial.

■ The pertinent facts contained in the record are admittedly sketchy. Even so, they are sufficient to raise serious doubt whether defendants can successfully argue that there was a failure to minimize and that such failure requires suppression. We have recognized that extensive wiretapping is more justified when its purpose is to learn the identities of far-flung conspirators and to determine the scope of the operation. *United States v. Daly*, 535 F.2d 434, 441 (8th Cir. 1976); *United States v. Kirk, supra* at 1275; *United States v. Cox*, 462 F.2d 1293, 1300–01 (8th Cir. 1972), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974). Moreover, the specialized jargon which normally attends a narcotics conspiracy also usually justifies more extensive monitoring. *United States v. Daly, supra* at 441; *United States v. Kirk, supra* at 1275. Even comprehensive monitoring may be justified at the outset if the agents have no way of identifying innocent calls either by person or subject matter. *United States v. Daly, supra* at 441. And, although listening should cease during parts of a discernible pattern of innocent conversations, interception of innocent conversations need not be totally eliminated, and spot-checking of innocent conversations is permissible. *Id.; United States v. Cox, supra* at 1301. Finally, we have held that interceptions directly within the ambit of a lawful order should not be suppressed merely because interceptions not within the ambit of the order also

occurred. *United States v. Cox, supra* at 1301–02.

On the other hand, we have consistently held that minimization arguments must be decided on a case by case basis and have declined to list exhaustively all of the facts which might be pertinent to the inquiry. *United States v. Daly, supra* at 440–41; *United States v. Kirk, supra* at 1275; *United States v. Cox, supra* at 1300. In *United States v. John,* 508 F.2d 1134, 1140 (8th Cir.), *cert. denied,* 421 U.S. 962, 95 S.Ct. 1948, 44 L.Ed.2d 448 (1975), we declined to address the minimization issue precisely because defendants had not sought to develop the pertinent facts before the district court. We have also consistently emphasized the importance of continued judicial supervision over the wiretap. *United States v. Daly, supra* at 443; *United States v. Kirk, supra* at 1275; *United States v. Cox, supra* at 1301. The record before us is noticeably silent in that respect.

On balance, we do not view the present record as sufficient to permit us to conclude as a matter of law that suppression is not required for improper minimization. To the contrary, we think defendants are entitled to elicit the pertinent facts at a hearing and to obtain from the district court appropriate findings of fact and conclusions of law.

We accordingly remand this case to the district court with instructions to conduct an evidentiary hearing and to certify to this court its findings of fact and conclusions of law as to whether the Government complied with 18 U.S.C. § 2518(5), and, if not, whether suppression is required. The extent of inquiry to be permitted during the hearing is within the discretion of the district court. *Mulligan v.*

8. We do not hold that *every* wiretap case necessitates a hearing on the minimization issue. In a particular case, that issue, for one reason or another, may be obviously not well-taken. We also note that in *United States v. Cirillo,* 499 F.2d 872, 880–81 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974), the Second Circuit held that sufficiently detailed affidavits with respect to the minimization issue, in light of the record before that court, rendered a hearing unnecessary. It may

*United States,* 358 F.2d 604, 608 (8th Cir. 1966). We retain jurisdiction over this appeal.[8]

Remanded.

well be that some cases can be resolved as fairly and more expeditiously by this means. Perhaps the progress reports frequently required by district courts, *see* 18 U.S.C. § 2518(6), could also serve this purpose.

In the present case, no such affidavits were filed, and, while Judge Regan's order did require progress reports to be filed, the record is void of any reference thereto and the Government does not rely thereon.