UNITED STATES of America

v.

**Alfred Henry MANUSZAK a/k/a Sassy Doc.**

**Crim. No. 73–647.**

United States District Court, E. D. Pennsylvania.

May 25, 1977.
Addendum To Opinion July 13, 1977.

**614**

Joel M. Friedman, Philadelphia Strike Force, Philadelphia, Pa., for plaintiff.

Donald J. Goldberg, Philadelphia, Pa., for respondent.

## OPINION

DITTER, District Judge.

The question presented in this case is whether probation may be revoked upon the basis of court-authorized wiretap evidence without first giving the probationer an opportunity to litigate the validity of the wiretap. Reluctantly, I conclude that it may not.

On January 30, 1974, respondent, Alfred Henry Manuszak, also known as "Sassy Doc," plead guilty to operating an illegal gambling business in violation of 18 U.S.C. § 1955. I imposed a fine of $4,000., suspended sentence of imprisonment, and placed Manuszak on probation for a period of three years upon the condition, *inter alia*, that he "refrain from any unlawful conduct." Subsequently, on January 27th of this year, the government petitioned to have Manuszak's probation revoked on the grounds that he has continued to engage in illegal gambling activities. The evidence upon which the government intends to rely at the revocation hearing consists of a telephone conversation between Manuszak and another individual which was intercepted pursuant to a wiretap order initially entered by Judge Broderick and extended by Judge Newcomer. After the petition was filed Manuszak requested that the government supply him with copies of the original and extension wiretap applications, orders, and supporting affidavits so that he might file a motion to suppress the intercepted conversations. Since Local Rule of Criminal Procedure 16(b) requires that motions to suppress evidence derived from electronic surveillance be heard by the judge who originally authorized it, in effect respondent requests this court to stay his probation revocation hearing until after Judge Broderick has ruled on his motion to suppress.

The government resists disclosure [1] of the requested items and opposes staying the revocation hearing on the grounds that these measures are unnecessary since, in its view, respondent is not entitled to test the validity of wire interceptions as a prerequi-

site to the use of evidence derived therefrom in a probation revocation proceeding. Two arguments are advanced by the government in support of its position. First, it contends that the legality of the interceptions is simply immaterial because the exclusionary rule does not apply to probation revocation proceedings. Alternatively, the government contends that even if the exclusionary rule does apply to probation revocation proceedings, this court's review of the legality of the interceptions should be limited to an *in camera* inspection of the court orders to see if they are facially valid.[2] The respondent takes issue with both of the government's arguments.

At the outset it is important to note that respondent does not and could not rely on the exclusionary rule developed *by the courts* as a remedy designed to safeguard fourth amendment rights through its supposed deterrent effect. See *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Numerous cases have held that this *judicially* created doctrine has no application in the probation revocation context. See, e. g., *United States v. Vandemark*, 522 F.2d 1019 (9th Cir. 1975); *United States v. Winsett*, 518 F.2d 51 (9th Cir. 1975); *United States v. Farmer*, 512 F.2d 160, 162–63 (6th Cir. 1975); *United States v. Brown*, 488 F.2d 94, 95 (5th Cir. 1973); *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161 (2d Cir. 1970) (parole revocation). Rather, respondent relies on the *statutory* exclusionary rule contained in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Section 802, as amended, 18 U.S.C. § 2515 [3] which, he contends, provides a sig-

---

1. The government has allowed counsel for the respondent to listen to the tape recording of the conversation upon which it will rely in seeking revocation of Manuszak's probation and also has provided counsel with a transcript of this conversation.

2. The government has supplied the court with copies of the court orders and supporting papers for *in camera* review. Presumably it is the government's position that since only the facial validity of the court orders is at issue, I may conduct such review without violating the

spirit of Local Rule 16(b). In view of my disposition of this case, I have no occasion to decide the correctness of the government's position. Cf. *In re Proceedings to Enforce Grand Jury Subpoena*, 430 F.Supp. 1071, at 1076 (E.D.Pa., filed April 14, 1977) (Lord, C. J.).

3. 18 U.S.C. § 2515 provides:
    Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence

nificantly broader exclusionary remedy where illegal electronic surveillance is involved than does the judicially created exclusionary rule. The government disputes that this statute has a broader sweep than its judicially created counterpart, yet in support of its position it relies primarily on cases which have refused to apply the *judicially* created rule to non-wiretap evidence in a variety of contexts. These cases are not controlling in the matter at hand.[4]

The only authority supporting the government's position that the statutory exclusionary rules does not apply to probation revocation proceedings is *United States v. Caron*, 474 F.2d 506, 509–10 (5th Cir. 1973), in which the court held that Section 2515 did not proscribe the use of evidence obtained by unlawful wiretapping for impeachment purposes.[5] In reaching its decision on the statutory point the court relied on a certain passage in the legislative history of Title III as evidencing Congress' intent that Section 2515 was not to expand the exclusionary rule beyond the confines of the judicially-created doctrine. The passage in question, contained in the Senate Report on the bill that included Title III, states:

> Section 2515 of the new chapter imposes an evidentiary sanction to compel compliance with the other prohibitions of the chapter. It provides that intercepted wire or oral communications or evidence derived therefrom may not be received in evidence in any proceeding before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision of a State, where the disclosure of that information would be in violation of this chapter. The provision must, of course, be read in light of section 2518(10)(a) discussed below, which defines the class entitled to make a motion to suppress. It largely reflects existing law. It applies to suppress evidence directly (*Nardone v. United States*, 58 S.Ct. 275, 302 U.S. 379 [82 L.Ed. 314] (1937)) or indirectly obtained in violation of the chapter. (*Nardone v. United States*, 60 S.Ct. 266, 308 U.S. 338 [84 L.Ed. 307] (1939).) There is, however, no intention to change the attenuation rule. See *Nardone v. United States*, 127 F.2d 521 (2d), certiorari denied, 62 S.Ct. 1296, 316 U.S. 698 [86 L.Ed. 1767] (1942); *Wong Sun v. United States*, 83 S.Ct. 407, 371 U.S. 471 [9 L.Ed.2d 441] (1963). *Nor generally to press the scope of the suppression role beyond present search and seizure law.* See *Walder v. United States*, 74 S.Ct. 354, 347 U.S. 62 [98 L.Ed. 503] (1954).

S.Rep.No.1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Adm.News, pp. 2184–85 (emphasis added), quoted in *Caron*, supra, at 509–10.

The problem with the quoted statement is that it is in fundamental conflict with the language of the statute itself, which plainly *does* extend the scope of the suppression remedy beyond conventional search and seizure law by providing that unlawfully intercepted communications may not be received in evidence "in *any* trial, *hearing or other proceeding* in or before any court, *grand jury*, department, . . . [etc.]"

---

4. The only cases cited by the government that involved electronic surveillance are *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) and *United States v. Schipani*, 435 F.2d 26 (2d Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971). However, both of those cases involved electronic surveillance that was conducted prior to the effective date of Title III and were not decided with reference to Section 2515.

5. The precise question presented to the Fifth Circuit in *Caron* was the propriety of the district court's action in allowing the government to utilize the wiretap evidence for impeachment purposes without a prior evidentiary hearing on its validity. However, the appeals court decided the case on the grounds that even if the tap "had been found . . . unlawful, use of the tape recordings solely for impeachment purposes would not be proscribed." 474 F.2d at 508.

in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

(Emphasis added.) The most obvious example of the expanded scope of the statutory exclusionary rule is found in the grand jury context. It traditionally has been the rule that the grand jury may consider incompetent or illegally obtained evidence and that an indictment based upon such evidence is not subject to challenge. See *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States v. Blue*, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Yet Section 2515 specifically excludes from use by the grand jury evidence derived from unlawful electronic surveillance. See *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). While disagreeing with the majority over the right of a grand jury witness to raise Section 2515 as a defense to a contempt charge brought for failure to answer questions based on information obtained through allegedly unlawful wiretapping, even the dissenters in *Gelbard* agreed that the statute "prohibits the use of illegally overheard . . . communications before grand juries as well as other governmental bodies." *Id.* at 72–73, 92 S.Ct. at 2373–74 (Rehnquist, J., dissenting). In *Calandra*, Mr. Justice Powell, who was one of the dissenters in *Gelbard*, offered the following explanation for the differing results reached in the two cases:

> The dissent's reliance on *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), is misplaced. . . The Court's holding [in *Gelbard*] rested exclusively on the interpretation of Tit. III, *which represented a congressional effort to afford special safeguards against the unique problems posed by misuse of wiretapping and electronic surveillance.* There was no indication, in either *Gelbard* or the legislative history, that Tit. III was regarded as a restatement of existing law with respect to grand jury proceedings. As Mr. Justice White noted in his concurring opinion in *Gelbard*, Tit. III "unquestionably works a change in the law with respect to the rights of grand jury witnesses . . . ." 408 U.S. at 70, 92 S.Ct. at 2372.

*Calandra*, supra at 355 n. 11, 94 S.Ct. at 623 (emphasis added).

Taken together, the combined force of *Gelbard, Calandra,* and the plain language of Section 2515 are sufficiently compelling to override the single passage in the legislative history relied on in *Caron*[6] and to convince me that the statute does indeed create a broader exclusionary rule than the judicially-created one. And since it cannot be disputed that a probation revocation proceeding is a "proceeding" within the meaning of Section 2515, I conclude that the statutory exclusionary rule is applicable here.

The government's fallback position is that even if the exclusionary rule does apply to probation revocation proceedings, the respondent is not entitled to a fullblown suppression hearing on the legality of the interceptions. Rather, relying on *In re Persico*, 491 F.2d 1156 (2d Cir.), cert. denied, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158, reh. denied, 419 U.S. 1060, 95 S.Ct. 645, 42 L.Ed.2d 657 (1974),[7] the government con-

---

**6.** Arguably the result reached in *Caron* may be supported on the ground that the citation of *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), in the legislative history is a particularly persuasive indicia that Congress did not intend to preclude impeachment use of evidence obtained through unlawful electronic surveillance. Another basis upon which *Caron* arguably is supportable is that the commission of perjury is so offensive to judicial integrity that the court's own interest in neutralizing its 'effects is strong enough to overcome all but a *specific legislative command that otherwise reliable evidence not be*

used for impeachment purposes. Cf. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Obviously, neither of these rationales apply to the government's use of unlawfully obtained wiretap evidence to support *its case in chief* in a probation revocation hearing.

**7.** See also *In re Grand Jury Proceedings (Worobyzt)*, 522 F.2d 196 (5th Cir. 1975), cert. denied, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *Droback v. United States*, 509 F.2d 625 (9th Cir. 1974), cert. denied, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 450 (1975); *In re Vigori-*

tends that the court should conduct only a limited *in camera* inspection of the interception order and supporting papers to determine their facial validity. In *Persico* the court adopted the position espoused in Justice White's concurring opinion in *Gelbard* and held that a grand jury witness was not entitled to a full suppression hearing prior to answering questions based on electronic surveillance where the government produced a court order authorizing such surveillance. The court concluded that only where the illegality of the surveillance may be established without resort to a suppression hearing, that is where the government either has admitted its illegality or failed to produce a court order or where the illegality has been determined in a prior judicial proceeding, could a grand jury witness rely on Section 2515 as a defense to a contempt charge. *Id.* at 1161.

The government's reliance on *Persico* here is misplaced. The *Persico* court based its decision on legislative history revealing Congress' understanding that the statutory exclusionary rule contained in Section 2515 would be limited by Section 2518(10)(a), which governs the class of persons entitled to make a motion to suppress and that the latter section did not extend to grand jury witnesses. *Id.* But while the legislative history of Section 2518(10)(a) clearly does show an intent to exclude grand jury witnesses from the class entitled to make a motion to suppress,[8] it evinces no similar intent with respect to a person facing pro-

bation revocation. More importantly, the legislative history of Section 2518(9) affirmatively shows that a probationer subject to revocation proceedings may invoke the suppression motion provided for in Section 2518(10)(a).

Paragraph 9 provides that the contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any Federal or State trial, hearing, or other proceeding unless each party not less than 10 days before the trial has been furnished with a copy of the court order under which the interception was authorized or approved. *"Proceeding" is intended to include all adversary type hearings. It would include a trial itself, a probation revocation proceeding, or a hearing on a motion for reduction of sentence.* It would not include a grand jury hearing. Compare [*United States v.*] *Blue*, 384 U.S. 251, 86 S.Ct. 1416, [16 L.Ed.2d 510] (1966). *The 10-day period is designed to give the party an opportunity to make a pretrial motion to suppress under paragraph (10)(a), discussed below.* Compare *Segurola v. United States*, [275 U.S. 106,] 48 S.Ct. 77, [72 L.Ed. 186] (1927). Where it is not possible to furnish the party the information 10 days before trial, and he would not be prejudiced, the judge may waive the requirement. Such a situation might arise, for example, when an intercepted communication became relevant only as a

---

*to*, 499 F.2d 1351 (2d Cir. 1974), cert. denied, 419 U.S. 1056, 95 S.Ct. 640, 42 L.Ed.2d 654 (1975). But see *In re Lochiatto*, 497 F.2d 803 (1st Cir. 1974). Cf. *Application of United States Authorizing Interception*, 413 F.Supp. 1321 (E.D.Pa.1976).

**8.** Paragraph (10)(a) provides that any aggrieved persons, as defined in section 2510(11), discussed above, in any trial hearing or other proceeding in or before any court department, officer, agency, regulating body or other authority of the United States, a State, or a political subdivision of a State may make a motion to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom. This provision must be read in connection with sections 2515 and 2517, discussed above, which it

limits. It provides the remedy for the right created by section 2515. Because no person is a party as such to a grand jury proceeding, the provision does not envision the making of a motion to suppress in the context of such a proceeding itself. Normally, there is no limitation on the character of evidence that may be presented to a grand jury, which is enforcible by an individual. ([*United States v.*] *Blue*, [384 U.S. 251,] 86 S.Ct. 1416, [16 L.Ed.2d 510] (1965).) There is no intent to change this general rule. It is the intent of the provision only that when a motion to suppress is granted in another context, its scope may include use in a future grand jury proceeding.

S.Rep.No.1097, supra, 1968 U.S.Code Cong. & Adm.News at p. 2195.

result of the character of a defense presented by the defendant. Ordinarily, prejudice would be shown only where it was established that the trial could not be reasonably recessed in order that the motion to suppress could be fully heard or that [the granting of a mistrial rather than excluding the evidence would be grossly unfair.

S.Rep.No.1097, supra, 1968 U.S.Code Cong. & Adm.News at pp. 2194–95 (emphasis added).

■■■ For the reasons stated above I conclude that the respondent is entitled to litigate the validity of the wiretaps in question prior to their use as evidence at his probation revocation hearing. I recognize and fully agree [9] with the government that the reasons for not applying the judicially-created exclusionary rule in the probation revocation context are equally applicable here and that the delay inherent in the statutory suppression remedy is likely to be every bit as inimical to the rehabilitation objectives of probation policy as it would be to the proper functioning of the grand jury. Nonetheless Congress has spoken and I am not free to disregard its clear mandate. Relief from perceived undesirable effects of the statutory exclusionary· rule must be sought through legislative, not judicial action.[10] The government's petition to revoke Manuszak's probation will be stayed pending resolution of the motion to suppress which respondent forthwith shall file before Judge Broderick.

**9.** Cf. *United States v. Iannece*, 405 F.Supp. 599, 606 (E.D.Pa.1975), aff'd sub nom., *United States v. Manuszak*, 532 F.2d 311 (3d Cir. 1976).

**10.** The government also resists disclosure of the court orders and supporting papers on the grounds that it will impair an on-going grand jury investigation by revealing the identity of actual or prospective grand jury witnesses who might then be subjected to pressure to refrain from testifying or to testify falsely. While I am sympathetic to the government's plight, the fact remains that it has sought to revoke respondent's probation and therefore under Section 2518(9) he has the right to be furnished with a copy of the court order and accompanying application. Unlike Section 2518(8)(d), dealt with by

## ADDENDUM TO OPINION

The government has asked that I reconsider my opinion of May 25, 1977, in the above matter. In that opinion I held that before probation may be revoked on the basis of evidence obtained through court-authorized electronic surveillance, the probationer must be given the opportunity to litigate the validity of the wiretap.[1] I have engaged in the requested reconsideration and will abide by my earlier decision. My reasons follow.

The specific portion of my prior opinion with which the government takes issue is footnote 10, which reads as follows:

(10) The government also resists disclosure of the court orders and supporting papers on the grounds that it will impair an on-going grand jury investigation by revealing the identity of actual or prospective grand jury witnesses who might then be subjected to pressure to refrain from testifying or to testify falsely. While I am sympathetic to the government's plight, the fact remains that it has sought to revoke respondent's probation and therefore under Section 2518(9) he has the right to be furnished with a copy of the court order and accompanying application. Unlike Section 2518(8)(d), dealt with by Judge Fogel in *Application of United*

Judge Fogel in *Application of United States*, supra, which gives the court discretion to deny access to the order and application, Section 2518(9) mandates that these items be made available to a party facing . . . "any proceeding," although Section 2518(10)(a) does give the court some discretion to deny access to the intercepted communications themselves.

**1.** The specific issues I decided in the earlier opinion were (1) that the statutory exclusionary rule contained in 18 U.S.C. § 2515 applies to probation revocation proceedings and (2) that a probationer facing revocation is among the class of persons entitled to make the statutory motion to suppress provided for by 18 U.S.C. § 2518(10)(a).

*States,* [413 F.Supp. 1321 (E.D.Pa. 1976)] which gives the court discretion to deny access to the order and application, Section 2518(9) mandates that these items be made available to a party facing . . . "any proceeding," although Section 2518(10)(a) does give the court some discretion to deny access to the intercepted communications themselves.

The government objects to the intimation in the above footnote that courts have no discretion to deny Section 2518(10)(a) suppression movants access to the wiretap application and order. It is the government's view that such discretion does exist and it therefore requests that I "strike footnote 10 from [my] Opinion and hold that Section 2518(9) does not divest the hearing judge of his discretion in determining what disclosure is appropriate on a motion to suppress."[2]

In support of its position that Section 2518(9) does not require disclosure of the wiretap application and order, the government first argues that this section is a notice and not a disclosure provision. The plain language of the statute is to the contrary, however. The statute does not say that a party facing a trial, hearing or other proceeding must be given notice of the wiretap; it says that he must be "furnished with *a copy* of the court order, and accompanying application." 18 U.S.C. § 2518(9) (emphasis added).[3] See *United States v. Ripka,* 349 F.Supp. 539, 541–42 (E.D.Pa. 1972), aff'd mem. *Appeal of Manuszak,* 480 F.2d 919 (3d Cir.), cert. denied sub nom., *United States v. Manuszak,* 414 U.S. 979, 94

S.Ct. 285, 38 L.Ed.2d 223 (1973). The government cites a number of cases which have held that failure to comply with various disclosure or inventory provisions of Title III do not necessarily require suppression of evidence derived from electronic surveillance. These cases[4] do not support the government's position. In relying on them it has failed to distinguish between the *requirements* of the Act and the *remedy* for failure to comply with those requirements. For example, in *United States v. Kohne,* supra, the court held that the failure to serve the order and application on the defendants ten days prior to trial did not require suppression of the wiretap evidence. But the court most certainly did not hold that the defendants had no right to obtain these documents from the government prior to moving for suppression. In fact the whole basis for the court's decision was that the defendants had suffered no prejudice since they had been provided with the application and order prior to the suppression hearing and had utilized them in cross-examining the government's witnesses at this hearing. 358 F.Supp. at 1057 and n. 4.

■ Noting that Section 2518(10)(a) enumerates in general terms the issues which may be raised in a motion to suppress but does not specify the nature of the proceeding which must be held to resolve these issues, the government next argues that this section does not require that an evidentiary hearing be held in every case. See *United States v. Losing,* 539 F.2d 1174 (8th Cir. 1976). I agree with this much of the government's argument and to the extent

**2.** Memorandum in Support of Government's Motion for Reconsideration at 2.

**3.** Section 2518(9) gives the trial judge discretion to waive the ten-day advance disclosure period but not to dispense with disclosure entirely. In fact the legislative history of the section reveals that even failure to comply with this ten-day provision will require exclusion of the wiretap evidence unless the motion to suppress can be "fully heard" anyway. S.Rep.No. 1097, 90th Cong. 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. 2195.

**4.** See *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 673–74, 50 L.Ed.2d 652; *United States v. Johnson,* 539 F.2d 181, 194 and n. 53 (D.C. Cir. 1976), cert. denied, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977); *United States v. Vento,* 533 F.2d 838, 864 (3d Cir. 1976); *United States v. Iannelli,* 477 F.2d 999, 1003 (3d Cir. 1973), aff'd, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *United States v. Kohne,* 358 F.Supp. 1053, 1057 (W.D.Pa.1973), aff'd mem. *Appeal of Jabella,* 485 F.2d 682 (3d Cir.), cert. denied, 417 U.S. 918, 94 S.Ct. 2624, 41 L.Ed.2d 224 (1974).

my prior opinion may have suggested that an evidentiary hearing is mandatory in every case, I now expressly declare that it was not my intention to do so.[5]

However, I do not agree that the court's discretion as to whether or not to hear evidence means that the court also has discretion to deny disclosure of the wiretap applications and order mandated by Section 2518(9) or that the court may determine the validity of the electronic surveillance *ex parte* by an *in camera* submission of these documents. Again, the case relied on by the government to support its position does not do so. *Losing*, supra, holds only that the court has discretion to deny a hearing on the suppression motion. It makes no suggestion that a similar discretion exists with respect to disclosure of the application and order and in fact, as in *Kohne*, supra, the defendants in *Losing* had been provided with the application and order prior to moving to suppress. See 539 F.2d at 1176–77.

■ Section 2518(10)(a) provides that a motion to suppress may be made on the grounds that:

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which [the communication] was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of interception or approval.

And the purpose of Section 2518(9) is not, as the government contends, merely to provide a person facing a "proceeding" with *notice* of the wiretap so that he can move to suppress; it is "designed to give the party *an opportunity* to make a pre-trial motion to suppress." S.Rep.No.1097, supra, 1968 U.S.Code Cong. & Admin.News, pp. 2194–95 (emphasis added). But how can a party

realistically have an *opportunity* to move to suppress on one or more of the statutory grounds if all he is told is that a wiretap has occurred and that evidence derived therefrom will be used against him in the forthcoming proceeding? Unless the legislative history is to be interpreted as contemplating that a party may be given only the opportunity to file a conclusory motion in language tracking that used in Section 2518(10)(a), Section 2518(9) must be construed as making disclosure of the application and order mandatory. *Losing* also supports this interpretation of Section 2518(9).

The *Losing* court adopted the criterion set forth in *United States v. Ledesma*, 499 F.2d 36 (9th Cir.), cert. denied, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974), for determining when a hearing on a suppression motion is required:

> Evidentiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question, an evidentiary hearing is required.

*Id.* at 39, quoted in *Losing*, supra at 1177. It is difficult to believe that a party would ever be able to file "definite, specific, detailed and nonconjectural" moving papers so as to obtain a hearing if he is not provided with a copy of the wiretap application and order. This is true regardless of the grounds upon which the motion is based.

■ Without access to the wiretap application the party against whom the government is proceeding would not know the information presented to the judge who approved the interceptions and could not challenge its accuracy nor could his counsel make an intelligent assessment of whether

---

**5.** As noted earlier, see note 1 supra, in my previous opinion I held only that a probationer facing revocation is entitled to make the statutory motion to suppress. See slip op. at 618. However, on page 617 of that opinion I stated, "The government's fallback position is that even if the exclusionary rule does apply to probation revocation proceedings, the respondent is not entitled to a fullblown suppression hearing on the legality of the interceptions." As the context makes clear, this statement was intended merely to reflect the *government's position* on the necessity of a hearing and not to suggest that I felt a hearing was mandatory.

the application established probable cause.[6] The party therefore would be in no position to assert (except in a conclusory fashion) that the communications were unlawfully intercepted. Denial of access to the application and order also would effectively preclude motions to suppress based on the second and third statutory grounds. Obviously, a party cannot argue that the wiretap authorization is facially insufficient unless he has an opportunity to review the face of the authorization. And to determine whether it would be fruitful to argue that the interception was not made in conformity with the order the party must be able to compare the terms of the order with the reality of the manner in which the interception was carried out. This, again, necessitates that the party have access to the order.[7]

■ I recognize that *In re Lochiatto*, 497 F.2d 803 (1st Cir. 1974), provides a modicum of support for the government's position that the validity of the wiretap may be determined by the court *in camera*,[8] but that case involved a grand jury witness and I agree with *In re Persico*, 491 F.2d 1156, 1161–62 (2d Cir.), cert. denied, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158, reh. denied, 419 U.S. 1060, 95 S.Ct. 645, 42 L.Ed.2d 657 (1974), that such a person is not entitled to make the Section 2518(10)(a) suppression motion. I therefore find *Lochiatto* distinguishable from the case *sub judice*.[9]

The government's third argument is that construing Section 2518(9) as a mandatory disclosure provision is inconsistent with Section 2518(8)(b) which provides for sealing of the wiretap application and order and disclosure only upon a showing of good cause.[10] The attempted analogy between

**6.** Contrary to the government's argument, supplying petitioner with a transcript of the conversation it intends to rely on at the revocation hearing is no substitute for furnishing the application and order because the transcript of what was actually overheard would be of no assistance in determining if there was probable cause for the interception in the first place.

**7.** Where the suppression motion is based upon the manner in which the interception was carried out, *i. e.* that it was not in conformity with the order of authorization, it is possible that the movant will desire access to some or all of the intercepted communications in addition to the application and order. As footnote 10 of my original opinion points out, disclosure of the communications themselves is committed to the court's discretion.

**8.** Unlike the Second, Fifth and Ninth Circuits, see *In re Persico, supra; In re Grand Jury Proceedings (Worobyzt)*, 522 F.2d 196 (5th Cir. 1975), cert. denied, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *Droback v. United States*, 509 F.2d 625 (9th Cir. 1974), cert. denied, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 450 (1975) the First Circuit in *Lochiatto* held that Section 2518(10)(a) does extend to a grand jury witness facing contempt proceedings. 497 F.2d at 806–07 & n. 7. Since the court also held that the validity of the wiretap could be determined *in camera* if the district judge, in his discretion, determined that disclosure would prejudice the government, the decision arguably would support using the same procedure here by analogy. However, as noted in the text, I agree with the courts that have held Section 2518(10)(a) inapplicable to grand jury

witnesses and therefore find the analogy unpersuasive.

**9.** The government also relies on Justice Stewart's concurring opinion in *Giordano v. U. S.*, 394 U.S. 310, 313, 89 S.Ct. 1163, 1165, 22 L.Ed.2d 297 (1969). In that case the Justice noted that the Court's decision in *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), dealt only with the question of what procedures should be utilized to determine if the defendant's convictions had been tainted by *admittedly* illegal electronic surveillance and did not hold that determination of the validity of the surveillance required an adversary proceeding. See also *Taglianetti v. United States*, 394 U.S. 316, 317, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969) (per curiam). These and several other cases cited by the government involved pre-Title III wiretaps and were decided on fourth amendment rather than statutory grounds. Here the basis of my decision is Section 2518(9), the plain language of which makes disclosure of the application and order mandatory for those, such as petitioner, entitled to make the statutory suppression motion.

**10.** Not only the contents of the application and order, but also their very existence may be protected from disclosure at least temporarily under the provision of Section 2518(8)(d) allowing for the postponement of service of the post-intercept inventory on an *ex parte* showing of good cause. But this section may not be invoked to delay disclosure of the application and order beyond the point when it is required to be made under Section 2518(9) to a party facing a "proceeding." See *United States v.*

Sections 2518(8) and 2518(9) must fail, however, because the two sections do not operate in the same context. Section 2518(8) establishes a procedural framework for providing notice to those who have been the target of an actual or attempted [11] wiretap or whose conversations have been overheard regardless of whether or not they have become the subject of a specific charge of wrongdoing.[12] See *Petition of Leppo*, 497 F.2d 954, 956 (5th Cir. 1974); *United States v. Best*, 363 F.Supp. 11, 19–21 (S.D.Ga.1973); *United States v. Lanza*, 341 F.Supp. 405, 420–21 (M.D.Fla.1972); *Application of United States*, supra. However, Section 2518(9) applies only to those who are facing a trial or other adversary proceedings, that is those against whom the government has sought the infliction of some form of punishment. This distinction was recognized by the Ninth Circuit in *United States v. Chun*, 503 F.2d 533 (1974).

Section 2518(8)(d) was clearly meant to provide this post-use notice. The Senate Report on that subparagraph states: "Yet the intent of the provision is that the principle of post-use notice will be retained." 1968 U.S.Code Cong. and Adm.News at 2194. Such post-use notice functions to provide individuals with the opportunity to exercise their constitutional right to challenge the validity of a

wiretap, and, thereby, the admissibility of evidence obtained or derived therefrom. See *Alderman v. United States*, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Section 2518(9) performs a dual function. First, it operates to provide the requisite post-use notice to aggrieved persons in those instances where it is not supplied by subparagraphs 2518(8)(d). *United States v. Ripka*, 349 F.Supp. 539, 541–542 (E.D.Pa.1972). *At the same time it also operates to provide additional information to an individual who has received § 2518(8)(d) notice, and who is subsequently indicted, so that he may be in a better position to attack the validity of the initial order.*

*Id.* at 537 n. 6. (emphasis added). In view of the consequences facing persons covered by Section 2518(9), *i. e.* the potential loss of liberty, it is not at all surprising that Congress would provide them with significantly greater procedural protections than those who have suffered only the invasion of privacy entailed in the wiretap itself or the affront to dignity which may result from learning one is under government suspicion of wrongdoing.[13]

▪ Finally the government argues that it is incongruous to require disclosure of the

---

*Eastman*, 465 F.2d 1057, 1063 n. 13 (3d Cir. 1972).

11. Notice must be given to the targets of a wiretap application that has not been approved by the court. See Section 2518(8)(d).

12. Grand jury witnesses fall into this category, which also explains why they are excluded from the class entitled to make the Section 2518(10)(a) suppression motion. The purpose of calling a witness before the grand jury is not to inflict punishment upon him but to secure the information he possesses with regard to a matter under investigation. In cases such as *Persico* and *Lochiatto* prosecution for contempt was not sought as an end in itself but only as a means of forcing the witness to provide the requested information.

13. The legislative history of Section 2518(8)(b) does contain the following statement, "Applications and orders may not be disclosed except incidental to the disclosure or use of the records themselves after a showing of good cause, for example, under [Section 2518](10)(a) discussed below." S.Rep.No.1097, supra, 1968 U.S.Code Cong. & Adm.News, at p. 2194. In view of the clearly directory character of the language used in Section 2518(9), the section which specifically deals with disclosure to a party facing a "proceeding," I believe the above statement must be taken to mean not that a showing of good cause is required for disclosure of the application and order incident to a Section 2518(10)(a) motion, but that the *opportunity* to file such a motion is in itself an example of "good cause" for the disclosure.

application and order and at the same time leave disclosure of intercepted communications or evidence derived therefrom to the discretion of the court. Even if this contention were entirely accurate, I would be forced to reject it because the plain language of Sections 2518(9) and 2518(10)(a) draw just such a distinction with respect to disclosure of these items.[14] In any event, the distinction appears not to be as irrational as the government suggests. First, Congress may well have believed that in the usual case information actually gathered through electronic surveillance would be more likely to be of a sensitive or highly personal character than information contained in the application and order for the interception and therefore concluded that the trial judge should have some leeway with respect to the former items but not the latter. Secondly, the information contained in the application and order usually will be of much greater importance to a party contemplating the filing of a suppression motion than the intercepted communications themselves. As noted previously access to intercepted communications would seem to be important only when the suppression motion is based on the third statutory ground, i. e., that the interception was not made in conformity with the application or order, and even then only when the

nature of the communications would be relevant to determining the motion.[15] The application and order, however, establish the very foundation upon which *any* surveillance was conducted in the first place and upon which its legality must stand or fall. Thus, a party must have access to these documents in order to make any kind of effective assessment of the surveillance's validity no matter what grounds may ultimately be relied upon to support a suppression motion.[16]

■ In summary then, I conclude that Section 2518(9) makes disclosure of the wiretap application and order mandatory to those, such as respondent Manuszak, within the class entitled to make a Section 2518(10)(a) suppression motion. I further conclude that the validity of the wiretap may not be determined in an *ex parte* proceeding by the court's reviewing these documents (*i. e.* the application and order) *in camera*, although the court may review intercepted communications *which are not part of the application in camera* if it becomes necessary to do so. After the application and order have been disclosed to the party facing a "proceeding" as explained in the legislative history of Section 2518(9) he is then entitled to move for suppression on any of the grounds enumerated in Section

14. Of course, the very fact that Sections 2518(8) and (10)(a) plainly do give the courts discretion with respect to certain matters shows that Congress was at no loss to find appropriate language when it wished to do so. Its failure to use such language with respect to Section 2518(9) is thus persuasive evidence that disclosure of the application and order under that section was intended to be mandatory.

15. For example if the motion were based on, say, failure to minimize interceptions of attorney-client conversations, review of such interceptions would be relevant to deciding the motion. Cf. *Losing*, supra, at 1179–80. In giving this example, I emphasize that the mere fact the intercepted communication is relevant to the motion to suppress does not mean that it *must* be disclosed. As noted in the text under Section 2518(10)(a) the judge has discretion with respect to such disclosure.

16. The government points out that applications and orders covered by Section 2518(9) need not be mutually exclusive of intercepted communications covered by Section 2518(10)(a). This situation would arise where evidence derived from one wiretap was utilized as part of the probable cause for obtaining a second wiretap. I agree with the government's observation as a factual matter, but am unable to agree that this justifies a conclusion that disclosure of the application and order is discretionary. While a communication may be more sensitive than other information contained in an application, once it is incorporated into another application it becomes part of the foundation upon which the legality of the other interception depends and for the reasons stated in the text its disclosure then becomes of paramount importance to a party facing a "proceeding" based on that interception.

2518(10)(a). While the decision to hold an evidentiary hearing on the suppression motion rests with the discretion of the judge hearing it depending upon the issues raised therein, the motion must be decided in an adversary context; that is the movant must at least be given an opportunity to present written or oral arguments in support of his position.

I recognize that where the wiretap application and order contain sensitive information the disclosure of which could prejudice an ongoing investigation, the government may be put to the hard choice of either foregoing its proceeding against the defendant or risking the frustration of its investigation. But this is a choice which Congress has in plain language decreed the government must make when it seeks to deprive a person of his liberty on the basis of wiretap evidence. In truth it is not much different than a number of other difficult decisions which the government must make in pursuing a criminal prosecution, such as when it must decide whether to proceed with a case that will require revelation of the identity of an informant. Cf. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

ORDER

AND NOW, this 13th day of July, 1977, having reconsidered this court's opinion of May 25, 1977, in the above matter, it is hereby ordered that the government's motion to strike footnote 10 from the opinion is denied.