UNITED STATES of America

v.

David Jose CANTU, a/k/a Jack; Donna Gill; Steven C. Madden; Jose Rolando Garza; Oscar Salas; and Samuel Hernandez Galindo.

UNITED STATES of America

v.

Randall D. PAULK, a/k/a Randy; Tommy Bennett; Robert Lee Hill, Jr., a/k/a Bobby; Robert L. Johns; Anthony Sessa; Ted Smith; Timothy Lee Van Alstine; Don Walley; Karl Weber; Scott Wolf; and Johnny Eugene Tanton.

Nos. PCR 85–00472–RV, 85–00473–RV.

United States District Court, N.D. Florida, Pensacola Division.

Dec. 31, 1985.

K. Michael Moore, Stephen P. Preisser, Asst. U.S. Attys., Pensacola, Fla., for the U.S.

Eustorgio Perez, Laredo, Tex., for David Jose Cantu.

Joel Fanning, Pensacola, Fla., for Donna Gill.

Gillis E. Powell, Jr., Crestview, Fla., for Steven C. Madden.

Joseph M. Crowell, Pensacola, Fla., for Jose Relando Garza.

Steve Orr, Austin, Tex., for Oscar Salas.

Henry R. Barksdale, Pensacola, Fla., for Samuel Hernandez Galindo.*

* Mr. Barksdale did not make an appearance until December 1985; Mr. Galindo was represented by Mr. Ramos during the suppression hearings.

Leo A. Thomas, Pensacola, Fla., for Anthony Sessa.

Thomas S. Keith, Asst. Federal Public Defender, Pensacola, Fla., for Ted Smith.

Barry Beroset, Pensacola, Fla., for Timothy Lee Van Alstine.

William Richbourg, Pensacola, Fla., for Karl Weber.

Joseph L. Hammons, Pensacola, Fla., for. Scott Wolf.

Jose Luis Ramos, Hebbronville, Tex., for Randall D. Paulk.

Robert R. Kimmel, Pensacola, Fla., for Tommy Bennett.

Roy Kinsey, Ronald W. Johnson, Pensacola, Fla., for Robert Lee Hill, Jr. and Don Walley.

Steven Bowden, Pensacola, Fla., for Robert L. Johns.

## ORDER AND MEMORANDUM OPINION

VINSON, District Judge.

The defendants in these cases, either individually or by adoption of co-defendants' motions, have moved to suppress (1) the contents of conversations recorded pursuant to a court-authorized interception of wire communications, and (2) any evidence derived from the contents of such conversations.[1] In its response to the motions and throughout the subsequent proceedings, the Government has maintained that the defendants have failed to make the requisite showing necessary to entitle them to an evidentiary hearing. In the absence of any clear authority regarding the requirements or the nature of hearings on motions to suppress oral or wire communications, and in an abundance of caution, the Court conducted a lengthy evidentiary hearing, during which a great deal of testimony was heard involving each of the issues raised in the defendants' motions.

This order will address each of the substantive challenges to the admissibility of evidence obtained in connection with the interception of wire communications.[2]

## I. FACTUAL BACKGROUND

During the course of an initial investigation of narcotics dealings on the part of defendant Paulk, Special Agent William J. Renton, Jr. of the Federal Drug Enforcement Agency ("DEA") acquired information that Paulk conducted narcotics transactions through use of his home telephone. Based on this and other information, Special Agent Renton and an Assistant United States Attorney applied to this Court for authorization to intercept wire communications on telephone number 904/477–8276, located at 592 Airway Drive, Pensacola, Florida. [18 U.S.C. § 2518(1)]

The application for wire interception was accompanied by an affidavit stating that many of the indicted defendants, and others not then known, had committed and were committing various offenses involving the distribution of narcotics and a conspiracy to violate narcotics statutes, all in violation of Title 21, *United States Code*, Sections 841(a)(1), 843(b), and 846. In an effort to comply with the provisions of Title 18, *United States Code*, Section 2518(1)(a)–(e), Special Agent Renton's affidavit recited

---

1. Title 18, *United States Code*, Section 2518(10)(a) permits any "aggrieved person" to move to suppress the contents of wire or oral communications made pursuant to Title 18, *United States Code*, Sections 2510 through 2520. An "aggrieved person" is one "who was a party to any intercepted ... communication ... or person against whom the interception was directed." [18 U.S.C. § 2510(11)] Whether each of the defendants could be considered an "aggrieved person" was briefly raised by the parties during the hearing. The issue was not pursued, however, and it was only those defendants clearly falling within the definition of "aggrieved persons" who actively participated in the examination of witnesses.

2. The Court also heard testimony regarding various motions to suppress evidence obtained through searches of residences and automobiles. Rulings on these motions were made orally and in compliance with Rule 12(e), Federal Rules of Criminal Procedure. Additionally, evidence was received regarding motions to suppress conversations intercepted pursuant to Title 18, *United States Code*, Section 2511(2)(c). These motions are addressed in a separate, written order.

the need for electronic surveillance, the investigative procedures that had been attempted, and numerous details upon which he justified his belief that an order to intercept should be issued. [Court Ex. 1]

On the basis of the application and affidavit, and on the basis of the authorization of the Assistant Attorney General in charge of the Tax Division of the Department of Justice, this Court, on July 30, 1985, entered an order authorizing the interception of wire communications in connection with telephone number 904/477-8276. Pursuant to Section 2518(3), the order contained findings (1) that probable cause existed to believe that a wire facility was being employed in the commission of narcotics offenses, and (2) that normal investigative procedures reasonably appeared unlikely to succeed if continued. The order also specifically identified the persons to be intercepted (other than persons not yet known), the nature of the communications to be intercepted, and the location of the communication facility where authority to intercept was granted. [See 18 U.S.C. § 2518(4)(a)-(e) ] Finally, the order mandated the minimization of interceptions and required that the Assistant United States Attorney provide the Court with weekly reports, demonstrating the progress that had been made toward the objective of the wiretap. [See Court Ex. 1]

Special Agent Renton supervised the wire intercept of Paulk's telephone for a period of twenty days. The wire interception was then terminated, and based largely upon the information obtained through the wiretap, the Government sought numerous arrest and search warrants involving the defendants in both of these cases. Eighteen defendants were arrested, and on August 20, 1985, a federal grand jury returned indictments charging the defendants with multiple counts of violating federal narcotics statutes.[3]

After discovery, the defendants moved to suppress the contents of the communications that were intercepted pursuant to this Court's order. The grounds upon which the defendants based their motions may be summarized as follows:

(1) The authorization for the intercept from the Office of the Attorney General was invalid;

(2) The affidavits in support of the authorization for wire interception did not establish probable cause;

(3) Special Agent Renton's affidavit contained misleading statements that the affiant knew were false or that he made in reckless disregard for the truth;

(4) Other investigative techniques and procedures were not used, or if they were or had been used, they would have been sufficient to negate the need for a wire interception;

(5) The communications intercepted were not minimized;

(6) The conversations intercepted were not recorded in a manner to preclude editing and alterations;

(7) The logs of intercepted calls were not maintained in a legal and proper manner; and

(8) Numerous equipment failures occurred, rendering the recordings unreliable and untrustworthy.

Defendant Gill also challenged the admissibility of the conversations against her on the basis that her name was absent from the affidavit and the Court order authorizing the interceptions.

All of the motions were set for a pre-trial hearing, commencing at 8:45 a.m. on October 10, 1985. The evidentiary hearings continued to 5:30 p.m. on October 17, 1985. At the conclusion of the hearings, I ruled from the bench on all issues, but specifically set out that this written order would follow on the matters addressed herein.

---

3. Superseding indictments were returned on September 17, 1985, each of which sets forth with greater specificity the crimes charged and adds additional charges against some of the defendants. (Doc. 218)

## II. TITLE III OF THE ORGANIZED CRIME CONTROL AND SAFE STREETS ACT OF 1968, TITLE 18, UNITED STATES CODE, SECTIONS 2510 THROUGH 2520

In 1968, Congress enacted Title III of the Organized Crime Control and Safe Streets Act, Title 18, *United States Code*, Sections 2510 through 2520. Title III provides a "comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard v. United States*, 408 U.S. 41, 46, 92 S.Ct. 2357, 2360, 33 L.Ed.2d 179 (1972). In light of the significant invasion of privacy engendered by nonconsensual wiretaps, however, Congress provided considerable procedural safeguards, "evincing the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974).

For example, Section 2516 strictly limits the category of federal officials who may authorize an application for a wire intercept to the "Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General specially designated by the Attorney General." [18 U.S.C. § 2516(1) ] Additionally, Section 2518 carefully details the procedures an applicant must follow in order to procure a court-authorized oral or wire interception. Finally, in order to encourage careful compliance with the provisions of Title III, Section 2515 prohibits the introduction of the contents of intercepted communications, or any evidence derived therefrom, into evidence in "any trial, hearing, or other proceeding," if the intercept violates the provisions of Title III.

## III. THE NATURE OF GROUNDS FOR SUPPRESSION: SECTION 2518(10)(a)(i)–(iii)

Title 18, *United States Code*, Section 2518(10)(a) enumerates those instances in which disclosure of intercepted oral or wire communications will be prohibited under Section 2515, and upon which a defendant may move to suppress:

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.[4]

Analysis of these statutory grounds in the context of an authorized wire intercept reveals three discrete categories or classifications into which any given challenge to the intercept might fall. And as will be discussed *infra*, the proper classification of challenges is necessary in determining the prerequisites to an evidentiary hearing.[5] First, a defendant may contest governmental conduct and events that occurred *before* the order for wire interception is entered by the Court. [18 U.S.C. § 2518(10)(a)(i) ] This class of challenges includes, for example, objections to the Attorney General's authorization under Section 2516, or objections to the affidavit[6] and application for court approval presented to the issuing judge.

---

**4.** There may exist additional challenges regarding the interception that do not squarely fall within one of these statutory violations. For example, Section 2518(8)(d) requires that the issuing or denying judge "cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion" an inventory, which includes "(1) the fact of the entry of an order or the application; (2) the date of the entry and the period of authorized ... interception ... and (3) the fact that during the period wire or oral communications were or were not intercepted." 18 U.S.C. § 2518(8)(d)(1)–(3). A violation of this provision would not appear to fall within the three statutory provisions cited in the text. Failure to give such notice, however, may give rise to a separate *constitutional* violation. *See United States v. Donovan*, 429 U.S. 413, 429 nn. 19, 22, 97 S.Ct. 658, 669 nn. 19, 22, 50 L.Ed.2d 652 (1977). No such challenge has been raised here; therefore, further amplification is unnecessary.

**5.** *See* section IV of this order, *infra*.

**6.** Objections to the affidavit would include challenges to the veracity or sufficiency of (1) probable cause, (2) any statement regarding investigative alternatives, and (3) any statement re-

The second category of challenges involves the facial sufficiency of the court's order authorizing the oral or wire interception. [18 U.S.C. § 2518(10)(a)(ii) ] This class of claims is directed only to the technical or formal requirements of Sections 2518(3)-(5).[7] For example, if the order stated that probable cause existed for a wiretap when, in fact, probable cause was lacking, the defendant's subsequent challenge would be to the sufficiency of the affidavit presented to the issuing judge, rather than to the facial sufficiency of the order.[8]

The final class of challenges under Section 2518(10)(a) involves governmental conduct occurring after the court authorizes the wiretap. [18 U.S.C. § 2518(10)(a)(iii) ] Analysis within this category focuses on whether the individuals conducting the oral or wire intercept had properly complied with the order of authorization. For example, if an individual monitoring the communications fails to properly minimize the interceptions, a defendant may move to suppress pursuant to Section 2518(10)(a)(iii).

## IV. PROCEDURAL PREREQUISITES NECESSARY TO INVOKE AN EVIDENTIARY HEARING

Once the court properly classifies the defendant's challenges to the wire intercep-

tion, it must then determine whether to conduct an evidentiary hearing. Unfortunately, Title III provides no guidance in this respect. While Section 2518(10)(a) generally enumerates the grounds upon which a motion to suppress may be based [*see supra* section III of this order], it fails to specify either when a hearing on the motion is required or what the nature of such a hearing should be. In addition, there exists a dearth of appellate decisions regarding the factors which a court should consider when deciding whether to conduct an evidentiary hearing under Title III. *See United States v. Losing*, 539 F.2d 1174 (8th Cir.1976); *see also United States v. Manuszak*, 438 F.Supp. 613 (E.D.Pa.1977). As stated by the Eighth Circuit Court of Appeals, however, there is "no reason why, for the purpose of determining whether a hearing is required, a motion to suppress wiretap evidence should be treated any differently from a motion to suppress other kinds of evidence." *Losing, supra*, 539 F.2d at 1177.[9]

Accordingly, and in an effort to identify specific guidelines in the context of motions to suppress oral or wire intercepts, the remainder of this section of the order will apply generally accepted standards pertain-

garding all previous applications for interception involving the same individuals for which interception is currently sought. *See generally* 18 U.S.C. § 2518(1)(a)-(f).

**7.** A claim that a particular defendant was not named in the wiretap order may fall into either the second class of challenges or the first class. *See* 18 U.S.C. §§ 2518(1)(b)(iv), (4)(a). For discussion of whether failure to name a defendant in an application or order for wire interception renders the communications inadmissible against that defendant, see *United States v. Donovan, supra; United States v. Hyde*, 574 F.2d 856, 862 (5th Cir.1978); *United States v. De La Fuente*, 548 F.2d 528, 538 (5th Cir.1977).

**8.** *See, e.g., United States v. Giordano, supra*, 416 U.S. at 525 n. 14, 94 S.Ct. at 1831 n. 14. (On its face, order clearly, though erroneously, identified authorizing individual under Section 2516(1). Court held challenge under Section 2518(10)(a)(ii) improper as intercept order was facially sufficient, despite what was subsequent-

ly discovered as an error. Proper challenge was under Section 2518(10)(a)(i) ); *accord United States v. Chavez*, 416 U.S. 562, 573-74, 94 S.Ct. 1849, 1855-56, 40 L.Ed.2d 380 (1974).

**9.** *See also United States v. De La Fuente, supra*, 548 F.2d at 534: "This case [challenging the underlying sufficiency of a judicially-issued wiretap authorization] is analagous to those in which an arrest or search was conducted under warrant but defendant challenges the legitimacy of the warrant itself." The principal piece of legislative history pertaining to Sections 2510-2520 also supports the Eighth Circuit's position. S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), U.S.Code Congressional & Administrative News 1968, p. 2112. The report evinces Congress' intent that 18 U.S.C. § 2518(10)(a) "largely reflects existing law," and that courts should not "press the scope of the suppression role beyond present search and seizure law." *Id.* at p. 2185.

ing to hearing requirements to the three classifications of challenges stated above.[10]

A. *Challenges to governmental conduct and events occurring before the order authorizing oral or wire interceptions*

As noted earlier, this classification of challenges includes objections to the Attorney General's authorization under Section 2516(1), as well as objections relating to the affidavit in support of the application for court approval. Challenges falling within this classification, however, may be further grouped into one of two categories: veracity and legal sufficiency. This further breakdown is integral in evaluating the adequacy of a particular motion to suppress, for the courts have applied differing pleading standards, depending on whether a defendant challenges the veracity of statements made in affidavits, or attacks the legal sufficiency of those statements.

1. *Challenges to Veracity*

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d, 667 (1978), the Supreme Court of the United States addressed the pleading requirements necessary to invoke an evidentiary hearing where a defendant challenges the veracity of statements made in an affidavit for a search warrant. Specifically, the court held that

> [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. *There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.* They should point out specifically the portion of the warrant affidavit that is claimed to be false; *and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.* Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

> *Franks v. Delaware, supra,* 438 U.S. at 171–72, 98 S.Ct. at 2684–85 (emphasis added) (footnote omitted).

It is true, of course, that an order authorizing a wiretap, as any other ordinary warrant, must be supported by probable cause. [18 U.S.C. § 2518(3)(a), (b), and (d)] Accordingly, courts have applied the test in *Franks v. Delaware* to motions to suppress wiretaps when a defendant asserts a challenge to the veracity of an affidavit made pursuant to Section 2518(1). *United States v. Bascaro,* 742 F.2d 1335, 1344, (11th Cir. 1984); *United States v. Harvey,* 560 F.Supp. 1040, 1050, 1074 (S.D.Fla.1982). *See generally* Batey & Marks, *Constitutional Criminal Procedure, 1984 Eleventh Circuit Survey,* 36 Mercer L.Rev. 1149, 1183–85 (1985). In addition, the courts have treated omissions from affidavits as misstatements and have applied a slightly altered version of *Franks v. Delaware.*[11] *Harvey, supra,* 560 F.Supp. at 1074.

---

10. *See* section III of this order, *supra.*

11. *United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1982) sets forth the test for determining suppression where omissions are alleged. In order for a court to suppress evidence, the defendant must show by a preponderance of the evidence (1) that the omissions were in fact made, (2) that the omissions were made intentionally or with reckless disregard for the truth, and (3) that if the omitted material had been included in the affidavit, the affidavit would be insufficient to show probable cause. *Accord*

■ While *Franks v. Delaware* and its progeny apply directly to challenges to the veracity of an affiant's statements relating to probable cause, there is no logical reason for restricting its pleading requirements to that context. Whether a defendant is challenging the veracity of an applicant's statements relevant to probable cause under Section 2518(1)(b), or whether he is challenging the veracity of an applicant's statements regarding any other statutory requirement recited in the affidavit,[12] the defendant still seeks to penetrate the affidavit and assert a subfacial challenge to its truth. Consequently, I conclude that, within the first classification of challenges, a defendant who contests the veracity of any statement[13] must comply with *Franks v. Delaware* in order to warrant an evidentiary hearing.[14]

### 2. *Challenges to Sufficiency*

■ The second category of attacks that might be made within the first class of challenges relates to the legal sufficiency of the Government's pre-wiretap conduct, as documented in the affidavit under Section 2518(1) and (2).[15] Once a particular attack is identified as a challenge to legal sufficiency, the necessity for an evidentiary hearing turns on the notion that "an evidentiary hearing is required ... only when necessary to receive evidence on an issue

of fact." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir.1983) [citing F.R. Crim.P. 41(e) and *In re Searches and Seizures Conducted, etc.*, 665 F.2d 775 (7th Cir.1981) ]. A corollary to this guideline, of course, is that "a hearing is unnecessary when it can be determined without a hearing that suppression is improper as a matter of law." *Losing, supra,* 539 F.2d at 1178; *see Cohen v. United States,* 378 F.2d 751, 760 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967).

■ Cognizant of these general principles, the Fifth Circuit adopted more specific guidelines to be considered by a district court in determining whether to conduct an evidentiary hearing:

> The question is whether the allegations of the moving papers, including affidavits if any are filed, *are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.* If the allegations are sufficient *and factual issues are raised,* a hearing is required.

> *United States v. Poe,* 462 F.2d 195, 197 (5th Cir.1972) (quoting *Cohen, supra,* 378 F.2d at 761) (footnote omitted and emphasis added).

*United States v. House,* 604 F.2d 1135, 1141 & n. 9 (8th Cir.1979).

**12.** For example, 18 U.S.C. § 2518(1)(c) requires the applicant to make "a full and complete statement as to whether or not other investigative procedures have been tried and failed...."

**13.** While challenges made regarding the Attorney General's authorization will generally pertain to its legal sufficiency, any attack against its veracity must also comply with *Franks v. Delaware.*

**14.** If a defendant fails to comply with *Franks v. Delaware, i.e.,* he fails to allege anything more than conclusory allegations regarding veracity, the court should dismiss the motion with leave to amend within a very limited time period, *e.g.,* two or three days. Because veracity inevitably involves issues of fact, dismissal with prejudice

would be inappropriate at this point. However, a defendant's failure to comply with *Franks v. Delaware* within the time allowed to amend should result in a dismissal on the merits of the particular challenge. If the court grants an evidentiary hearing, the burdens of production and persuasion rest upon the defendant as articulated in *United States v. DeLaFuente, supra,* 548 F.2d at 533–37.

**15.** For example, defendants here challenge, *inter alia,* the legal sufficiency of the probable cause recited in the affidavit, the legal sufficiency of the alternative investigative techniques employed, and the authority of the individual who executed the authorization for court approval under Section 2516(1). Each of these attacks clearly falls within the first class of challenges, [section III of this order, *supra* ] and goes to the legal sufficiency of the Government's position.

In the context of granting an evidentiary hearing on motions to suppress oral or wire communications grounded upon legal sufficiency, I conclude that the guidelines set forth by *Poe, supra,* 462 F.2d at 197, are controlling.[16]

■ If a defendant fails to comply with the pleading requirements of *Poe,* however, and the court determines that a hearing is unnecessary, the court should then proceed to decide the issues of legal sufficiency on their merits.[17] If the affidavit and other documents submitted to the court in support of the wiretap application are factually detailed, then issues of legal sufficiency may be decided as a matter of law on the information then available to the court.[18] If, however, the affidavit does not adequately assist the court in its determination, the court may require the parties to present additional written or oral arguments without the need for an *evidentiary* hearing.[19]

**B.** *Challenges to the facial sufficiency of the Court's order of authorization or approval*

■ Challenges relating to the facial sufficiency of the court's order fall within the second classification of challenges to the wiretap. [18 U.S.C. § 2518(10)(a)(ii); *see* section III of this order, *supra.* ] In both *United States v. Giordano, supra,* and *United States v. Chavez, supra,* the Supreme Court has indicated that facial challenges to the court's authorizing order are more formal than substantive. In essence, if such an attack on the order is made, the reviewing court need only compare the contents of the order with the requirements of Sections 2518(3) through (5). Clearly, this procedure may be accomplished without the necessity of an evidentiary hearing. Nevertheless, if the Court determines that under *United States v. Giordano, supra,* the communication should not be suppressed even though the order is formally deficient, the movant should be given an opportunity to present legal arguments in support of his position.[20]

**16.** The court in *Poe* did note that "we make no effort to enumerate all the factors which a district court might consider in deciding whether a hearing is necessary...." 462 F.2d at 197. And, depending on the facts of the case, an evidentiary hearing may be beneficial even though the defendant had not met the pleading requirements set forth in the text. Inherent in these flexible guidelines, therefore, is the recognition that the district court has broad discretion in its determination of whether an evidentiary hearing is required in a particular case. *Losing, supra,* 539 F.2d at 1178; *Poe, supra,* 462 F.2d at 197.

**17.** In essence, a failure to comply with *Poe* reduces the issue of legal sufficiency to a matter of law. For even if factual issues remain, they are by definition, insubstantial. "The question is whether the allegations ... enable the court to conclude that a *substantial* claim is present ... and *factual* issues are raised." *Poe, supra,* 462 F.2d at 197 (emphasis added). Therefore, a defendant's failure to invoke an evidentiary hearing under *Poe* does not necessarily mean that the government will prevail. For the court may determine that, as a matter of law, the affidavit or authorization is insufficient in some respect. *But see United States v. Giordano, supra,* 416 U.S. at 527, 94 S.Ct. at 1832: "The words 'unlawfully intercepted' [18 U.S.C. § 2518(10)(a)(i) ] ... require suppression where there is failure to satisfy any of those statutory requirements that *directly* and *substantially* implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." (Emphasis added) Whether an evidentiary hearing is held under *Poe,* therefore, the defendant's attack may yet fail under *Giordano.*

**18.** *See* discussion of *Giordano, supra,* n. 17.

**19.** *See United States v. Manuszak, supra,* 438 F.Supp. at 625:

While the decision to hold an evidentiary hearing on the suppression motion rests with the discretion of the judge hearing it depending upon the issues raised therein, the motion must be decided in an adversary context; that is the movant must at least be given an opportunity to present written or oral arguments in support of his position.

*See also* Local Rule 6(A), U.S.D.C., N.D.Fla. (memoranda of law required to be served and filed with every motion in a civil or criminal proceeding with citation of authorities in support of the motion), and Local Rule 6(C) (parties opposing motion to file similar memoranda within ten days after being served with motion). Again, burdens of production and persuasion rest upon the defendants as set forth in *United States v. De La Fuente, supra,* 548 F.2d at 533–37.

**20.** This opportunity is made available and, in fact, is necessitated through compliance with Local Rule 6(A). *See supra* note 19.

## C. Challenges to governmental conduct and events occurring after entry of the court order

The third and final classification, as earlier noted, involves issues relating to whether the Government and its agents have properly complied with the court's authorization. [18 U.S.C. § 2518(10)(a)(iii); *see* section III of this order, *supra.* ] This class of attacks, however, differs significantly from the previous classes in that, absent substantial discovery by the defendants, the Government is often in exclusive possession of information that would enable the movant to allege facts with the specificity required by either *Franks v. Delaware, supra,* or *United States v. Poe, supra.*

■ Consequently, I conclude that, while the pleading guidelines set forth in *Poe, supra,* 462 F.2d at 197, are controlling here as well, the court should apply those guidelines somewhat less rigorously; [21] however, if the government has permitted, or the court has ordered, discovery of information sufficient to permit the movant to specifically attack events occurring within this classification of challenges, the guidelines in *Poe, supra,* should be more rigorously applied and the motion scrutinized more carefully. *See United States v. Losing, supra,* 539 F.2d at 1180–81. In any event, if an evidentiary hearing is deemed necessary, the inquiry should be narrowly restricted to the relevant factual issues.[22]

## V. SUBSTANTIVE CHALLENGES TO THE INTERCEPTION OF WIRE COMMUNICATIONS

In view of the pleading requirements developed above, it has become increasingly clear that many, if not all, of the allegations of the defendants' motions are insufficient to invoke an evidentiary hearing. I am able to reach this conclusion, however, only after the benefit of time during which I was able to thoroughly analyze the defendants' motions in the known factual setting and to research what little law exists regarding the procedural aspects of motions to suppress wire and oral communications under Title III. Thus, I am now able to address the merits of each ground asserted by the defendants within the structure of challenges previously delineated. Nevertheless, where appropriate, I shall refer to whether the defendants' particular allegations met the procedural prerequisites for an evidentiary hearing that are set forth above.

**21.** The defendants have argued that much of the information regarding challenges under the first classification [18 U.S.C. § 2518(10)(a)(i) ], *i.e.,* challenges to pre-wiretap conduct or events, is also within the government's exclusive possession. Thus, a more liberal application of *Poe, supra,* should be applied there as well. This argument is unpersuasive, however, in that challenges falling within the first category differ significantly from challenges within the third category. A court entertaining challenges falling within category one is, in essence, reviewing determinations previously made by a "judge of competent jurisdiction," [18 U.S.C. § 2510(9) ] who has already reviewed the affidavit and made findings pursuant to Section 2518(3) and (4). The deference which a reviewing court should give to the issuing judge's determination, *United States v. Weinrich,* 586 F.2d 481, 487 (5th Cir.1978); *Bastida v. Henderson,* 487 F.2d 860, 863 (5th Cir.1973), is provided by requiring the movant to plead with more specificity in order to invoke an evidentiary hearing. On the other hand, matters relevant to challenges falling within the third classification have yet to undergo judicial scrutiny. Consequently, an evidentiary hearing may be more readily invoked, even though the movant has pled less specifically. Therefore, there are sound reasons for treating the pleading requirements under category one differently from the pleading requirements under category three.

**22.** As with challenges involving the legal sufficiency of events documented in the affidavit, the Court should dispose of the issues raised as a matter of law in the event that an evidentiary hearing is unnecessary. *See supra* § IV(A)(2) of this order and note 19. Burdens of production and persuasion relevant to this category of challenges may be somewhat different than those relevant to the prior two categories of challenges. These burdens of production and persuasion will be addressed in the context of a discussion of the defendants' particular challenges that fall within this category.

## A. Challenges to governmental conduct and events occurring before the order authorizing oral or wire interceptions

(1) *Executive authorization.* The defendants' first ground falling within this category of challenges involves the Attorney General's authorization under Section 2516. Specifically, the defendants contend (1) that Glen Archer, Jr., Assistant Attorney General in charge of the Tax Division of the United States Department of Justice, lacked the authority to properly authorize the wiretap pursuant to Section 2516, and (2) that Archer's authorization was invalid "because it is evident from the authorization that Archer never reviewed the application and materials" offered in support of executive authorization. (Doc. 125, PCR 85–472) [23]

Title 18, *United States Code,* Section 2516(1), provides that

> [t]he Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for ... an order authorizing or approving the interception of wire or oral communications by ... a Federal agency having responsibility for the investigation of the offense as to which the application is made....

Under the defendants' first claim, therefore, the only issue is whether Assistant Attorney General Archer was "specially designated" by the Attorney General to authorize an application for a wire interception. According to Order No. 1088–85, Office of the Attorney General, which was signed by Attorney General Edwin Meese, III, on March 28, 1985, Mr. Archer was duly designated to authorize such a wiretap, provided that he exercise his authority "only when the Assistant Attorney in charge of the Criminal Division is not in the District of Columbia or is otherwise not available." Order No. 1088–85, at 2.

■ The Government introduced undisputed evidence at the hearing, which clearly indicated that the Assistant Attorney General in charge of the Criminal Division was absent from Washington, D.C., during the times relevant here. [Government's Ex. 3] There is no question, therefore, that Assistant Attorney General Archer, as a specially designated Assistant Attorney General, was properly acting pursuant to his authority under Section 2516 when he approved the application for the wire intercept.

■ The defendants' second claim, that Assistant Attorney General Archer never reviewed the affidavit and materials before he authorized the wiretap, also fails. Courts have consistently held that the Attorney General's authorization under Section 2516 is presumptively valid and that the defendant bears the burden of overcoming this presumption. *United States v. Jabara,* 618 F.2d 1319, 1327 (9th Cir.1980); *United States v. De La Fuente, supra,* 548 F.2d at 531–37. Moreover, this presumption cannot be overcome by the defendants' mere allegation that the Assistant Attorney General did not personally review the application. *United States v. Jabara, supra,* 618 F.2d at 1327.

■ In this case, Assistant Attorney General Archer expressly referred to a recommendation of one of his subordinates in his memorandum authorizing the wire intercept. The defendants' position, apparently, is that the Assistant Attorney General merely adopted the surbordinate's recommendation without actually reviewing it himself. Contrary to the defendants' position, however, the language of Archer's memorandum is equally, if not more, con-

---

**23.** Both of these claims question the legal sufficiency of Mr. Archer's authorization. None of the defendants' allegations, however, complies with *United States v. Poe, supra,* 462 F.2d at 197, and sufficient documents were presented to the Court along with the United States Attorney's application for wire intercept to enable me to resolve these claims as a matter of law. Consequently, no evidentiary hearing would have been necessary. *See* section IV(A)(2) of this order, *supra.*

sistent with the view that he personally examined all relevant materials before he gave his authorization. In any event, absent more than the defendants' speculative and conjectural accusations, I decline to review the mental processes by which Assistant Attorney General Archer exercised his authority.[24] *See, e.g., United States v. Feldman,* 535 F.2d 1175 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976); *United States v. Turner,* 528 F.2d 143 (9th Cir.1975), *cert. denied,* 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976); *United States v. Acon,* 403 F.Supp. 1189 (W.D.Pa.1975). Thus, I find that Assistant Attorney General Archer's authorization was in full compliance with Section 2516.

(2) *Probable cause.* The defendants' next challenge the affidavit offered by the Government to the Court in support of its application for the wire intercept on the ground that it fails to establish probable cause as required by Section 2518(3)(a), (b), and (d). The defendants' attack is twofold: first, they challenge the veracity of certain statements in the affidavit which arguably relate to probable cause; and, second, they challenge the legal sufficiency of the affidavit, claiming that much of the included information was stale, that the affiant's reliance on confidential informants was unreasonable, and that the affidavit contains an unreasonable amount of hearsay and double hearsay.

The defendants' challenge to Special Agent Renton's veracity involves two allegedly inconsistent statements: one made in the affidavit in support of the wiretap, and the second in a subsequent affidavit offered in support of a search warrant. Paragraph (46) of the wiretap affidavit reads in part:

46. Based on my experience and the experience of other narcotics agents, it is my belief that the use of search warrants would not provide sufficient evidence

necessary to determine the full scope of the criminal activity and the various methods being utilized by the subjects in obtaining and distributing the illicit drugs. *These individuals are not believed to keep records of their previous drug transactions* and are not storing bulk quantities of controlled substances at their residences at all times.

*Affidavit of Special Agent Renton,* July 30, 1985, at 36 (emphasis added).

Paragraph (11) of Renton's search warrant affidavit reads in part:

*Your affiant is aware, based on his experience and training, that persons involved in the distribution of illegal substances keep records to assist them in collecting monies owed for drugs supplied on an other than cash basis.* Based on these facts and information and my experience and training received in the area of drug law enforcement it is the belief of your affiant that the residence, persons, vehicles and out-buildings at the above-described location contain, retain, and conceal evidence of cocaine and marijuana trafficking.

*Affidavit of Special Agent Renton,* August 15, 1985, at 7 (emphasis added).

The defendants contend that the language emphasized in the two excerpts above is conflicting and misleading and that Renton knew that the language in paragraph (46) of the wiretap affidavit was false, or that he was at least reckless with regard to its truth. Moreover, the defendants insist that they are entitled to an evidentiary hearing. As noted, an evidentiary hearing was held in order to insure that all of the facts were fully aired, but it is clear that a hearing regarding veracity was unnecessary under *Franks v. Delaware, supra,* and that the defendants' attack on veracity cannot prevail.

---

**24.** The Government offered at the suppression hearing an affidavit of Mr. Archer, wherein he states that he fully reviewed the Government's affidavit and application, as well as his subordinate's memorandum, before acting on the

United States Attorney's request for the wiretap. While introduction of Archer's affidavit was unnecessary in light of the defendants' failure to carry its initial burden, the affidavit certainly supports the conclusion that I reach in the text.

First, under *Franks v. Delaware, supra,* a defendant challenging the veracity of an affidavit must allege a deliberate falsehood or a reckless disregard for the truth, and must accompany his allegations with an offer of proof. Here, the defendants have offered proof of falsity or recklessness in the form of two ostensibly conflicting statements. Whether these statements regarding records of drug sales were actually conflicting, however, is open to dispute. At the hearing, Renton testified that the records to which he referred in paragraph (46) were the type that would assist law enforcement in determining the full scope of the drug conspiracy. Consistent with the remainder of paragraph (46), Renton again asserted that such *detailed* records rarely, if ever, exist in cases such as this, and that is what he so stated in paragraph (46). On the other hand, Renton testified that the records to which he referred and sought in paragraph (11) of the search warrant affidavit were only sketchy jotations of money owed, amounts of drugs sold, and names of buyers—all probably written in some kind of code. Unlike the records noted in paragraph (46), these types of records, according to Renton, would not provide evidence of the full scope of the drug conspiracy, but would only minimally assist in the prosecution of a drug conspiracy. Because Renton believed that these types of records did exist, he sought to search for them by warrant.

While Renton's testimony is credible in light of my own observations of the evidence in many other drug cases, I find it unnecessary to base my decision regarding veracity on his explanation. For assuming, without deciding, that the defendants' position supports a claim of deliberate falsehood, and setting to one side Renton's reference to "records" in paragraph (46), I find that, as a matter of law, the remaining information is abundantly sufficient to support probable cause under Section 2518(3).[25] In fact, a most convincing argument could be made that the reference to "records" in paragraph (46) of the wiretap affidavit is completely irrelevant to the issue of probable cause. To the contrary, it appears that paragraph (46) was intended to support the application for wire interception on an entirely separate issue—*i.e.,* whether other investigative techniques would be reasonably likely to fail if attempted. [*See* 18 U.S.C. § 2518(3)(c), discussed *infra*] Therefore, had the two ostensibly inconsistent paragraphs been drafted consistently, probable cause would remain unaffected. [*Cf. United States v. Thomas,* 489 F.2d 664 (5th Cir.1973) (search warrants invalid if affidavit contains intentionally misleading information, regardless of materiality). Rule changed, however, after *Franks v. Delaware, supra. See Garland v. Maggio,* 717 F.2d 199, 204 n. 3 (5th Cir.1983). *See also United States v. Coronel,* 750 F.2d 1482 (11th Cir.1985) (questionable description of informant's status minimally relevant to probable cause)] Nevertheless, Renton's 39-page affidavit is replete with information legally sufficient[26] to justify a finding of probable cause.

The defendants' further attacks on legal sufficiency are addressed in the context of two controlling principles. First, when making a determination of probable cause, the magistrate or judge issuing the warrant must view the "totality of the circumstances" set forth in the affidavit before him, "including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76

---

**25.** In addition, the testimony at the evidentiary hearing failed to show that Agent Renton was acting either deliberately or recklessly when he included the reference to records in paragraph (46) of the wiretap affidavit. Accordingly, my conclusion could rest solely on this finding. *See Franks v. Delaware, supra,* 438 U.S. at 171, 98 S.Ct. at 2684 ("Allegations of negligence or innocent mistake are insufficient."). Because I have determined that a hearing was unnecessary regarding this issue, however, I prefer to rest my decision on reasons not derived from the testimony.

**26.** Legal sufficiency of the affidavit is discussed further in the context of staleness, use of confidential informants, and the use of hearsay statements, *infra.*

670

L.Ed.2d 527 (1983). Additionally, "the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.*, 462 U.S. at 238, 103 S.Ct. at 2332, citing *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960).

■ Second, as with any case where an original, judicial determination of probable cause is reviewed, a judge's determination of probable cause under Section 2518(3) is conclusive, absent arbitrariness. *United States v. Hyde*, 574 F.2d 856, 862 (5th Cir.1978); *Bastida v. Henderson*, 487 F.2d 860, 863 (5th Cir.1973); *United States v. Harvey*, 560 F.Supp. 1040, 1051 (S.D.Fla. 1982). *See also Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 29 L.Ed.2d 637 (1969).

The defendants first contend that the affidavit relies too heavily on the use of information supplied by informants without sufficiently setting forth some underlying circumstances relating to each informant's credibility or to the factual basis of the informant's information. The Supreme Court, however, has abandoned this familiar *Aguilar-Spinelli* approach, in favor of a more fluid, manageable inquiry into the existence of probable cause. *Illinois v. Gates, supra.* The two "prongs" of *Aguilar-Spinelli* remain only as viable considerations when assessing an affidavit based on an informant's hearsay statements. *Illinois v. Gates, supra*, 462 U.S. at 233, 103 S.Ct. at 2329. In this case, the 39-page affidavit contains information clearly sufficient to support a finding of probable cause under *Illinois v. Gates, supra.* Unquestionably, the DEA relied primarily on the statements of informants during the inception of its investigation. Three of the informants, Polise, E. Hayes, and Moore, are individuals who, upon entering pleas of guilty to various drug charges, agreed to cooperate with law enforcement. Each of these individuals discussed his illegal asso-ciations with defendant Paulk and generally discussed Paulk's *modus operandi*.

One informant, Stephen Reed, was particularly instrumental in facilitating the DEA's investigation of this conspiracy. Reed, who voluntarily agreed to cooperate with the DEA after a valid search warrant was successfully executed on his residence, had a substantial connection with defendant Paulk's illegal enterprise. As Paulk's private "secretary," Reed possessed a great deal of detailed information regarding Paulk's *modus operandi*. For example, Reed stated that an individual who desired to purchase a quantity of cocaine from Paulk would first call Paulk on his "beeper-unit," and leave a telephone number where the individual could be reached. Paulk would then return the individual's telephone call, generally within a short period of time, and set up the details of the narcotics' transaction. Reed indicated that Paulk used this method to avoid revealing his home telephone number to potential buyers and his subordinate dealers. Reed was also aware of various properties held by Paulk through nominees that were purchased with Paulk's illicit drug proceeds. In fact, one of these assets was a pleasure boat, which was held in Reed's name. Additionally, Reed provided various telephone numbers of Paulk's secondary distributors, and the names of many members of the conspiracy under investigation. Reed also personally observed drug transactions between Paulk and other members of the conspiracy. Furthermore, Reed's account of Paulk's activities substantially corroborated the facts related to Renton by the previous three informants.

Standing alone, and on the basis of the test articulated in *Illinois v. Gates, supra*, Renton's reliance on the confidential informants' statements might well have been sufficient to support probable cause. *See United States v. Hyde, supra*, 574 F.2d at 862–64; *United States v. Bell*, 457 F.2d 1231 (5th Cir.1972).[27] The affidavit, how-

---

27. The defendants' arguments regarding Renton's use of hearsay are essentially subsumed by the discussion in the text. Hearsay and double hearsay statements are to be viewed under the same criteria as other statements offered by the affiant in support of probable cause. *Illinois v.*

ever, goes much further to support probable cause. In view of the information provided by the informants, the DEA (1) conducted its own surveillance of Paulk and his residence; (2) corroborated information through the use of property records, telephone company records, and a state court authorized pen register; (3) legally recorded conversations between confidential informants and members of the conspiracy, pursuant to Section 2511(2)(c); and (4) arranged a controlled drug transaction, wherein the narcotics purchased were ultimately supplied by Paulk. Each of these actions was fully recited in the affidavit. Consequently, unlike cases where a warrant is sought solely on the basis of uncorroborated hearsay statements of an informant whose reliability is somewhat dubious, Agent Renton sought wiretap authorization here only after amassing a considerable amount of information supporting more than a "fair probability that contraband or evidence of crime" [*Illinois v. Gates, supra*, 462 U.S. at 239, 103 S.Ct. at 2332] would be procured through a wiretap.

The defendants also challenge the affidavit on the ground that the information it contains is fatally stale.[28] Specifically, the defendants assert that most of the information recited in the affidavit was at least sixty days old at the time the wiretap was sought. A fundamental rule of search and seizure law holds that an application for a search warrant must be timely and that probable cause must exist "at the time the warrant issues." *United States v. Hyde, supra*, 574 F.2d at 864. In *Bastida v. Henderson, supra*, 487 F.2d at 864 (5th Cir.1973), the court articulated the general test with regard to the issue of staleness:

> In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime. The Circuits hold that where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.

Additionally, there is little doubt that "protracted and continuous activity is inherent in large-scale drug trafficking operations." *United States v. Bascaro*, 742 F.2d 1335, 1346 (11th Cir.1984), citing *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir.1983). Accordingly, the issue of staleness should be construed quite liberally, as time is of less significance.

Here, the affidavit alleges continuing criminal activity that had begun as early as 1983. The affidavit does recite information relating to transactions that occurred more than six months prior to the date that the wiretap was sought. The affidavit, however, also includes information involving government surveillance, government-controlled drug transactions, telephone company records, property records, and pen register readouts—all of which occurred or were procured within one to two months of the wiretap authorization. I find, therefore, that the affidavit provided timely information that Paulk and the other named defendants were part of a drug conspiracy and that Paulk's telephone was being used in connection with that conspiracy at the time the wire intercept application was submitted.[29] *United States v. Domme*, 753

---

*Gates, supra*, 462 U.S. at 238, 103 S.Ct. at 2332; *United States v. DeCesaro*, 502 F.2d 604 (7th Cir.1974); *United States v. Finn*, 502 F.2d 938 (7th Cir.1974).

**28.** The defendants have not alleged anything which would invoke the necessity for an evidentiary hearing on the issue of staleness. *See* section IV(A)(2) of this order, *supra*. Consequently, I decide this issue as a matter of law.

**29.** While not readily apparent, the requirement that law enforcement attempt to utilize alternative investigative techniques [18 U.S.C. § 2518(3)(c)] will often be inherently in conflict with the requirement that the information in the affidavit be recent. As law enforcement attempts to exhaust alternative investigative measures, information originally triggering the investigation is bound to become stale. This fact supports an extremely liberal view of staleness in the context of wire interceptions under Section 2518: at least when a far-reaching narcotics conspiracy is the subject of the investigation.

F.2d 950 (11th Cir.1985); *United States v. Bascaro, supra,* 742 F.2d at 1345; *United States v. Weinrich,* 586 F.2d 481 (5th Cir. 1978); *United States v. Hyde, supra.*

(3) *Normal investigative procedures.* In their final challenge falling within category one, the defendants contend that the affidavit was inadequate to support a finding that the wire intercept was necessary. As with their previous attack on probable cause, the defendants refute both the veracity of Special Agent Renton's statements and the legal sufficiency of those statements.

Section 2518(1)(c) requires that the applicant must include:

A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous.

Before authorizing the wiretap, the judge must determine, based on the facts submitted by the applicant, that

Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to suceeed if tried or to be too dangerous[.]

18 U.S.C. § 2518(3)(c).

I have already noted that, when a defendant challenges the veracity of statements relating to statutory requirements that are made in the application for wire interception, regardless of whether those statements relate to probable cause, the defendant must satisfy the strictures of *Franks v. Delaware, supra.* [*See* section IV(A)(1) of this order, *supra* ]

First, the defendants rely on the alleged inconsistent statements, discussed earlier in the context of probable cause, as their offer of proof of Renton's falsity or reckless disregard for the truth. Specifically, in the wiretap affidavit, Renton stated that "[b]ased on my experience, ... these individuals are not believed to keep records of their previous drug transactions...." *Af-*

*fidavit of Special Agent Renton,* July 30, 1985, ¶ 46, at 36. In a subsequent search warrant affidavit, however, Renton stated that "based on [my] experience and training, ... persons involved in the distribution of illegal substances keep records to assist them in collecting monies owed for drugs supplied on an other than cash basis." *Affidavit of Special Agent Renton,* August 15, 1985, ¶ 11, at 7. The defendants now assert that, in view of paragraph (11) of the search warrant affidavit, Agent Renton was always aware that drug sale records were kept by at least some of the defendants in this case. Therefore, contrary to Renton's statement in paragraph (46) of the wiretap affidavit, use of search warrants was a viable investigative alternative to the wiretap, and Renton was misleading the Court when he stated otherwise.

Assuming, without deciding, that the defendants have satisfied the first prong of *Franks v. Delaware, supra,* by pointing to possible evidence of falsity or reckless disregard for the truth,[30] I find that, after disregarding the allegedly false material, and even *including* the statement made in paragraph (11) of the search warrant affidavit, the wiretap affidavit is still legally sufficient under Sections 2518(1)(c) and (3)(c). *United States v. Martin, supra,* 615 F.2d at 328.

Initially, Renton's reference to drug sale records must be read in the context of the remaining language of paragraph (46):

Further, if the search were to be conducted of the premises, some of the potential targets would be alerted and could either destroy relevant evidence and/or avoid prosecution by severing their contacts with Paulk and his organization.

*Affidavit of Special Agent Renton,* July 30, 1985, ¶ 46, at 36.

Therefore, even if the defense did keep drug sale records, Renton's position was that the premature execution of search warrants would be unsuccessful in light of

---

**30.** As noted, Renton attempted to explain the purported inconsistencies identified by the de-

fendants. *Ante,* pp. 668–669.

his reasonable efforts to effect prosecution of as many members of the alleged conspiracy as possible. Accordingly, the presence or absence of drug records was only marginally material, if at all, to the viability of search warrants in this case.[31]

In addition to the viability of search warrants, Renton also related six other investigative alternatives that were either attempted and had failed, or were not deemed to be feasible. For example, the DEA attempted visual surveillance, but because of the location of Paulk's residence beside an open field, they were unsuccessful. Additionally, witnesses stated to Renton that Paulk was very wary of possible police surveillance and would conscientiously try to avoid it. Clearly, then, surveillance was not as successful as the defendants indicated, and further surveillance was logically rejected. *See United States v. Messersmith,* 692 F.2d 1315, 1317–18 (11th Cir.1982).

The DEA also made use of a pen register, but this limited investigative tool only supplies law enforcement with the telephone numbers of callers connected with the target telephone; it does not identify individuals actually making or receiving the calls, or the nature and substance of the conversations. Renton, often in consultation with other agents or an Assistant United States Attorney, additionally considered the efficacy of other investigative measures, such as initiating a federal grand jury investigation, using agents to infiltrate the conspiracy, additionally using the services of confidential informants, and personally interviewing the participants in the alleged conspiracy. After consideration, however, Renton viewed each alternative as impracticable and as highly unlikely to succeed in apprehending as many members of the purported conspiracy as possible. All of this information, including

Agent Renton's opinions as to the viability of various investigative alternatives, was amply set out in his affidavit. *Affidavit of Special Agent Renton,* July 30, 1985, ¶¶ 41–47.

When reviewing the affidavit for compliance with Sections 2518(1)(c) and (3)(c), "[i]t is enough if the affidavit explains the prospective or retroactive failure of several investigative techniques that reasonably suggest themselves." *United States v. Hyde, supra,* 574 F.2d at 867. In addition, the affidavit must be "tested in a practical and common sense fashion." S.Rep. No. 1097, 90th Cong., 2d Sess., 100 U.S.Code Cong. & Admin.News (1968), pp. 2112, 2190; *United States v. Robertson,* 504 F.2d 289, 293 (5th Cir.1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778 (1975); *United States v. Brick,* 502 F.2d 219, 224 n. 14 (8th Cir.1974). Finally, a wiretap order should not be invalidated "simply because defense lawyers are able to suggest *post factum* some investigative technique that might have been used and was not." *United States v. Alonso,* 740 F.2d 862, 869 (11th Cir.1984), citing *United States v. Hyde, supra,* 574 F.2d at 867.

Applying these standards in a "common sense fashion" to Special Agent Renton's wiretap affidavit, Sections 2518(1)(c) and (3)(c) are clearly satisfied. Renton diligently attempted to discover facts that, in his view, would reasonably support a conviction for narcotics conspiracy. The affidavit, however, makes it clear that he was not able to do so using traditional investigative techniques, and that the wiretap was needed to disclose the full nature and extent of the conspiracy as well as to gather sufficient evidence against its leader, defendant Paulk. When the Government's objective is to ascertain the full scope of an alleged narcotics conspiracy, and although the Government might possess information

---

**31.** Additionally, Renton stated that he did not believe that the defendants were "storing bulk quantities of controlled substances at their residences at all times." *Affidavit,* July 30, 1985, ¶ 46, at 36. The defendants have not challenged this statement. If search warrants were executed on the defendants' residences, therefore, it was quite possible that no drugs would be seized, or that only quantities for personal use would be found. A successful prosecution for conspiracy to distribute cocaine or marijuana would be highly unlikely based on such little evidence.

sufficient to prosecute any one of the alleged conspirators singularly, "it is unrealistic to require the termination of an investigation before the entire scope of the narcotics distribution network is uncovered and the identity of its participants learned." *United States v. Armocida*, 515 F.2d 29, 38 (3d Cir.1975), *cert denied sub nom., Gazal v. United States*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), cited with approval in *United States v. Hyde, supra*, 574 F.2d at 869. *See also United States v. Daly*, 535 F.2d 434, 438 (8th Cir.1976).

■ Consequently, and in view of all the information supplied in the affidavit, the defendants' challenge to the wiretap on the issue of alternative investigative techniques fails.[32] *United States v. Williams*, 580 F.2d 578, 589 (D.C.Cir.), *cert. denied*, 439 U.S. 832, 99 S.Ct. 112, 58 L.Ed.2d 127 (1978) (affiant's conclusion as to need for wiretap upheld when read in conjunction with other portion of affidavit containing detailed descriptions of the investigative events attempted prior to wiretap request).

B. *Challenges to the facial validity of the Court's order of authorization or approval*

Defendant Gill contends that the absence of her name from the wiretap application and court order renders any evidence derived from the wiretap inadmissible against her. In order to dispose of the defendant's contention, I need only compare the contents of the order with the requirements of Sections 2518(3) through (5).[33] *See* section IV(B), *supra*, of this order.

Section 2518(4) provides in part that an order authorizing the interception of any wire or oral communication "shall specify ... the identity of the person, if known, whose communications are to be intercepted." [18 U.S.C. § 2518(4)(a) ][34] In *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), the Supreme Court held that the application and court order must name all individuals that the Government has probable cause to believe are engaged in a criminal activity and whose conversations are expected to be intercepted. The Court, however, further held that evidence obtained from a wiretap need not be suppressed merely because a particular defendant was not named, where there is no suggestion of bad faith on the part of the Government and the defendant had been supplied with an inventory notice.

■ In this case, Gill has not suggested bad faith on the part of the Government in failing to name her in the application. In addition, by order of this Court dated October 4, 1985, the United States Attorney's Office was required to provide defendant Gill, among others, with an inventory notice pursuant to Section 2518(8)(d). · Accordingly, Gill's attack premised on the absence of her name from the order authorizing the wiretap is without merit. *United States v. De La Fuente, supra*, 548 F.2d at 538; *see also United States v. Hyde, supra*, 574 F.2d at 862.

A number of other defendants have also moved for suppression on the ground that the order of authorization or approval under which the conversations were intercepted is insufficient on its face. These de-

32. Defendant Gill has cited *United States v. Lilla*, 699 F.2d 99 (2d Cir.1983), in support of her position. However, *Lilla* is clearly distinguishable in that the affidavit offered by a New York State Trooper in that case did not "reveal what, if any, investigative techniques were attempted prior to the wiretap request." *United States v. Lilla, supra*, 699 F.2d at 104. Contrary to Renton's affidavit, which contained a detailed factual basis regarding investigative techniques used or considered, the affidavit in *Lilla* merely stated that " 'no other investigative method exists to determine the identity' of individuals who might have been involved with [the defendant]." *Id.* The court, accordingly, held that the affidavit

failed to satisfy the statutory requirements under Section 2518(1)(c).

33. As noted in note 7, *supra*, Gill's challenge might fall within category one or category two. I have chosen to treat this ground as an attack on the order itself.

34. Title 18, *United States Code*, Section 2518(1)(b), requires that the application set forth the identity of the person, if known, committing the offense and whose communications are to be intercepted.

fendants, however, did not amplify on this allegation in their memoranda of law, and failed to raise this issue or introduce any evidence regarding this issue during the evidentiary hearing. Therefore, I may treat these allegations as completely without merit.

### C. Challenges to governmental conduct and events occurring after entry of the Court order

The defendants' final attacks on the wire intercept involve events that allegedly occurred after the wiretap was initiated and which were not in compliance with the Court's authorization.

(1) *Failure to minimize.* The defendants first contend that the Government failed to minimize the interception of conversations by recording communications not otherwise subject to interception under Title III of the Organized Crime Control and Safe Streets Act.[35] [*See* 18 U.S.C. § 2518(5) (order must contain a provision that interception "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this Chapter....")]

In order to determine whether the Government properly minimized calls under Section 2518(5), a "test of reasonableness" is applied to the particular facts of each case. *Scott v. United States*, 436 U.S. 128, 139–40, 98 S.Ct. 1717, 1724–25, 56 L.Ed.2d 168 (1978); *United States v. Hyde, supra*, 574 F.2d at 869. Factors to be considered in determining whether minimization was reasonable are threefold: "(1) the nature and scope of the criminal enterprise under investigation; (2) the government's reasonable inference of the character of a conversation from the parties to it; and (3) the extent of judicial supervision."[36] *United States v. Hyde, supra*, 574 F.2d 869; *United States v. Daly, supra*, 535 F.2d at 441.

Nearly every monitoring agent who testified in this case stated that he or she had attended a briefing conducted by the United States Attorney's Office where agents were instructed on minimization procedures

---

**35.** While the nature of the governmental conduct differs somewhat in this category of attacks, in order to determine the necessity of an evidentiary hearing, *United States v. Poe, supra*, must be applied to the defendants' motions, though somewhat less vigorously. *See* section IV(C) of this order, *supra*. The defendants' motions, however, do no more than allege that the Government failed to minimize the interceptions. Consequently, the defendants have failed to raise any specific factual issue entitling them to an evidentiary hearing on the issue of minimization. However, because the Court conducted an evidentiary hearing where a great deal of testimony was taken regarding minimization, I will address the issue on its merits with some reference to that testimony. However, I note that the issue could be resolved as a matter of law by reference only to the documents found in the record, such as weekly status reports and daily logs kept by the monitoring agents.

**36.** Aside from the issue of whether the defendants' allegations have necessitated a hearing on minimization is the issue regarding the burden of proof relating to minimization. In *United States v. Rizzo*, 491 F.2d 215, 217 n. 7 (2d Cir. 1974), the Second Circuit, without citation, concluded that

[t]he burden of proof on the minimization issue ... necessarily rests, in the first in-

stance, on the government. * * * The United States Attorney must be prepared to sustain that burden even in the case where the defense is unprepared or chooses not to present evidence on the issue.

To the extent that this passage implies that the defendant can invoke an evidentiary hearing on the basis of a bare allegation that conversations were not minimized, I respectfully disagree. [*See* section IV(C) of this order, *supra*] In addition, I also seriously question whether the Government does, in fact, bear the initial burden of production regarding minimization. *See United States v. De La Fuente, supra*, 548 F.2d at 533–37 (burden of production and persuasion generally rests with the movant in a suppression hearing). Because information regarding minimization may be exclusively within the possession of the Government, however, I would agree that once a defendant has properly invoked an evidentiary hearing under *United States v. Poe, supra*, and has met his initial burden of production, the Government should bear the ultimate burden of persuasion to prove that minimization was reasonable. *See United States v. De La Fuente, supra*, 548 F.2d 536–37 (suggesting that this type of shifting burden may be appropriate in certain instances). In any event, I find here that the Government has met its burden, whether it be one of persuasion, or of both production and persuasion.

and given a memorandum dated July 24, 1985, outlining those procedures in detail. The memorandum also defined the nature of communications that should be minimized. Those monitoring agents who did not attend the meeting were briefed individually before actual monitoring by either an Assistant United States Attorney or Special Agent Renton. Each monitoring agent, however, was required to read the memorandum and to indicate that he or she had done so by signing his or her name to an acknowledgement sheet attached to the memorandum. The monitoring agents further testified that: (1) they would listen to and record conversations only long enough to determine whether they were connected with criminality; (2) when the agent determined that the call did not concern criminal activity, both aural monitoring *and* recording would cease; and (3) when monitoring was discontinued on any particular call, the monitor would wait approximately fifteen seconds and then turn the recorder back on only long enough to ascertain whether the subject of the conversation had turned to criminality. Each monitoring agent recorded in daily logs when a conversation was minimized and why.

Standing alone, the monitoring agents' testimony reveals clearly that minimization was reasonable, even without regard to the nature of the crime under investigation or the extent of judicial supervision. *See, e.g., Scott v. United States, supra; United States v. Hyde, supra,* 574 F.2d at 870 (monitoring procedure whereby agent listens only long enough to determine character of conversation is "only feasible approach"). However, the nature of the criminal enterprise under investigation here further supports the reasonableness of the minimization in this case. For when the Government is investigating a widespread conspiracy, it is "appropriate for [monitoring] agents ... to monitor calls more extensively than might have been appropriate in a simpler case." *United States v. Hyde, supra,* 574 F.2d at 869. In addition, the conversants' use of jargon and

code words for narcotics, such as "eight-ball" (meaning ⅛ ounce of cocaine) and "white puppies" (meaning 1 ounce baggies of cocaine), necessitated more extensive monitoring of conversations. *United States v. James,* 494 F.2d 1007, 1019 (D.C. Cir.1974); *United States v. Cox,* 462 F.2d 1293 (8th Cir.1972).

Finally, this Court scrutinized the entire wiretap throughout all of its phases by requiring weekly reports pursuant to Section 2518(6). In those reports, the Assistant United States Attorney indicated what progress had been made toward achievement of the authorized objectives and whether further interception was necessary. Attached to the reports was a summation of the daily logs kept for the relevant week with a transcription of relevant conversations. Accordingly, with the assistance of the weekly reports, this Court was able to make an independent evaluation regarding the necessity of further wire interceptions. Courts have uniformly held that such judicial supervision helps to safeguard the rights of individuals affected by the wiretap, and accordingly, those courts have been inclined to find that proper minimization has been met. *United States v. Quintana,* 508 F.2d 867, 875 (7th Cir.1975); *United States v. James, supra,* 494 F.2d at 1021.

 In view of the authority cited above, and considering the three factors required to determine reasonableness of the Government's minimization efforts, I find that the intercepted conversations were reasonably minimized in accordance with this Court's authorization of July 30, 1985.

The defendants' remaining contentions within the third category of challenges require the Court to determine whether: (1) the intercepted conversations were recorded in a manner to preclude editing or alteration; (2) the logs were maintained in a legal and proper manner; and (3) alleged numerous equipment failures rendered the recordings unreliable and untrustworthy.[37]

37. Again, the defendants have failed to meet

even a less restrictive application of *United*

It is clear, and the testimony supported the fact, that the recordings of the conversations were made in a manner which precluded tampering to the greatest extent possible. Two monitoring agents worked together on twelve-hour shifts. The conversations were recorded on cassette tapes through the use of three Marantz PDM cassette recorders. One recorder was designated to record the "original" set of tapes, while the remaining two recorders were used as a backup system. All three recorders, however, were automatically activated whenever an incoming or outgoing call occurred at Paulk's telephone. After the original tape was complete or at the end of each shift, whichever came first, all three tapes were removed from the three recorders, labeled and initialed by the monitoring agents in charge, and placed in a sealed plastic bag, which was also labeled. Each bag was then placed in a locked box to which only Special Agent Renton had access. Renton would then retrieve the tapes after each shift and transport them to the DEA's vault in Panama City, Florida. In addition, any individual entering the monitoring room was required to log his name, the date, and the time of day on an attendance sheet. I find that the DEA's recording procedures were manifestly reasonable and reliable.

With regard to the monitoring agents' alleged improper maintenance of logs, no factual basis exists and no evidence was introduced that would support this contention.

Finally, with respect to equipment failures, I find that the few malfunctions that did occur did not affect the reliability of the tape recordings. At most, the malfunctions—some caused by power surges and others by Paulk's own telephone equipment—affected no more than four or five conversations out of a total of 570 intercepted communications. Moreover, the logs indicate that the malfunctions largely affected nonevidentiary-type conversations. I find, therefore, that the few equipment failures that did occur in no way rendered

the tapes unreliable and inadmissible on that basis.

## VI. CONCLUSION

As noted earlier, it is my considered opinion that there was no necessity for an evidentiary hearing on each of the issues raised by the defendants. A great deal of time and expense was needlessly invested in conducting the hearing and taking evidence. If I had had the benefit of defined procedural guidelines, I could have, and would have, reached this conclusion much earlier.

For the reasons set forth above, each of the defendant's motions to suppress the contents of conversations intercepted pursuant to this Court's order of July 30, 1985, is DENIED.

*States v. Poe, supra.* Thus, an evidentiary hearing on these three issues was not necessary.